**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca
Katherine Van Dyck
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel:  (202) 789-3960
Fax:  (202) 789-1813
*charlesl@cuneolaw.com*
*kvandyck@cuneolaw.com*

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq. (Bar ID #: JS4546)
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
*sultzerj@thesultzerlawgroup.com*

**HALUNEN LAW**
Melissa S. Weiner
Amy E. Boyle *(admission forthcoming)*
1650 IDS Center
80 South Eight Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
*Weiner@halunenlaw.com*
*boyle@halunenlaw.com*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tanya Mayhew, Tanveer Alibhai, and Tara Festa, individually on behalf of themselves and all others similarly situated, : : : | Case No. 16 CV 6981 (VB) |
| Plaintiffs, : | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL OF FORM NOTICE, AND SCHEDULING OF FINAL APPROVAL HEARING** |
| v. : | |
| : : : | |
| KAS DIRECT, LLC and S.C. JOHNSON & SON, INC., : : | |
| Defendants. | |

## Introduction

Tanya Mayhew, Tanveer Alibhai, and Tara Festa ("Plaintiffs") and Defendants KAS Direct, LLC and S.C. Johnson & Son, Inc. ("Defendants"), through their counsel (collectively, "the Parties"), have negotiated a proposed settlement that provides substantial benefits to a proposed nationwide class of persons in the United States who purchased Babyganics' Products during the Class Period (the "Settlement Class"). The Amended Settlement Agreement establishes a claims process whereby consumers may obtain monetary compensation by submitting an approved Claim Form. The terms of the claims process are set forth in the First Amended Joint Stipulation of Settlement ("Settlement" or "Agreement" or "Amended Settlement Agreement"), which is attached to the Declaration of Melissa S. Weiner as Exhibit 1 and described herein.

As the Court is aware, this is a Renewed Motion for Preliminary Approval, which comes after significant work on behalf of the Parties to craft a fair and wholesome settlement that fairly compensates class members and addresses important label revisions. Following the Motions to Intervene in the initial settlement agreement filed with the Court, the Parties set out to reach a resolution that would address all filed class members' allegations of false advertising regarding the Products given that the release in the Settlement pertains to and covers all Covered Products. Plaintiffs respectfully submit that the terms of the Settlement are fair, adequate, and reasonable for the Settlement Class and that the requirements for Final Approval will ultimately be satisfied. However, for Preliminary Approval, the Court need only assess whether the Amended Settlement Agreement is within the range of what may be found to be fair, adequate, and reasonable, so the Settlement Class Members can be notified of the proposed Settlement and a Final Approval Hearing can be scheduled. Only after Settlement Class Members and others have had an opportunity to receive notice and present evidence at the Final Approval Hearing will the Court need to render final judgment regarding the fairness of the proposed Settlement.

At this preliminary stage, Plaintiffs respectfully request the Court enter an Order (1) granting Preliminary Approval of the Amended Settlement Agreement; (2) approving the proposed Notice Plan; (3) directing notice to the Settlement Class Members; (4) enjoining the prosecution of other litigation on behalf of the Settlement Class Members asserting any of the Released Claims; and (5) scheduling a Final Approval Hearing. Plaintiffs also respectfully request the Court conditionally certify the proposed Class for the purposes of Settlement.

## Factual and Procedural Background

### I.    Background of Litigation.

Plaintiffs filed this action on September 7, 2016, alleging that Defendant KAS Direct, LLC's use of the name "Babyganics" on a wide range of products and the term "Mineral-Based" on a number of its Sunscreens constituted fraudulent, unfair, unlawful, and deceptive business practices, in violation of the laws of the States of California and New York. (Dkt. 1, Class Action Compl. at 2-6.) Plaintiffs sought both injunctive and monetary relief. (*Id*. at 72.) The filing of the Class Action Complaint was preceded by a year of efforts by the parties to resolve their dispute. Counsel for Plaintiffs first sent a settlement demand letter and proposed complaint to KAS on November 20, 2015, in accordance with California's Consumer Legal Remedies Act ("CLRA"). (Decl. of Melissa S. Weiner ("Weiner Decl.") ¶ 6.) The parties corresponded for several months thereafter regarding potential settlement and ultimately agreed to a mediation with David Rotman of Gregorio, Haldeman & Rotman in San Francisco on August 10, 2016. (*Id.* ¶ 7.) Plaintiff initiated the instant lawsuit the following month. (*Id.* ¶ 8; *see also* Dkt. 1.) However, the parties continued to discuss the potential for an early settlement and agreed to attend a mediation on March 30, 2017, this time with Michael Young of JAMS in New York. (Weiner Decl. ¶¶ 9-12.) Before the second mediation Defendants produced, pursuant to a Protective Order/Confidentiality Agreement, certain sales and marketing information to enable Class Counsel and Plaintiffs to

better evaluate settlement. (*Id.* ¶ 10.) The Parties also had numerous conversations, including two in-person meetings and several telephone calls, before the second mediation. (*Id.* ¶ 11.) Counsel for Plaintiffs and Defendants attended the mediation along with a representative of Defendants. (*Id.* ¶ 12.) Though the parties did not reach an agreement that day, they continued arm's-length settlement discussions and ultimately reached a resolution on or about May 31, 2017. (*Id.*) For nearly eight weeks thereafter, the Parties continued to negotiate the terms of the Settlement. (*Id.*)

Plaintiffs filed their First Amended Class Action Complaint on August 4, 2017, naming S.C. Johnson as a Defendant. (Dkt. 37.) The same day, the Parties filed for Preliminary Approval of the Joint Stipulation of Settlement. (Dkt. 38.) Thereafter, three groups of Proposed Intervenors filed Motions to Intervene: (1) on August 11, 2017, Proposed Intervenors Skeen, Blanusa, Brown, Vidal, and Timmermeier ("*Tear Free* Intervenors") filed a Motion to Intervene (Dkt.50); (2) on August 18, 2017, Proposed Intervenor Machlan filed a Motion to Intervene (Dkt.52); and (3) on August 25, 2017, Proposed Intervenors Carroll, Exo, Ryden, and Shaffer ("*SPF* Intervenors") filed a Motion to Intervene (Dkt. 56). After the Proposed Intervenors filed their motions, the Parties participated in an in-person mediation with Mr. Young, at which all intervenors were invited to participate.

Each of the Proposed Intervenors filed their lawsuits either ***after*** Plaintiffs were engaged in substantive settlement discussions or had already alerted the Court of a settlement in this action.

First, the *Tear Free* Intervenors, who filed their complaint on June 2, 2017 (after the Parties in this case reached a settlement) filed a Motion to Intervene on August 11, 2017 (after litigating their claims for only a month). (Dkt. 50.) They sought to intervene, arguing that they "have an interest in this action, which may be impaired or impeded because they are actively litigating claims that are subject to disposition against their wishes in unrelated litigation." (Dkt. 50-1 at

14.)  They further argued that "the settling parties in the *Organic* Litigation are giving away claims possessed *only* by absent class members in exchange for the settlement."  (*Id.* at 15.)  Plaintiffs opposed the motion, given that the *Tear Free* Intervenors' claims and the relief they seek are not separate and distinct from those at issue in this case.  (Dkt. 87.)  Both Plaintiffs and the *Tear Free* Intervenors (1) purchased Babyganics' shampoo & body wash or bubble bath, (2) allege that they purchased those products because they believed they were safe for infants and children, and (3) that Defendants' use of the trademark, Babyganics, is meant to invoke parents' trust.  (*Id.* at pp. 2-3.)  Therefore, Plaintiffs respectfully requested that the Court deny their Motion to Intervene.  (*Id.* at 12.)

Second, Intervenor Machlan, who filed his complaint on March 17, 2017, filed a Motion to Intervene on August 18, 2017.  (Dkt. 52.)  On October 10, 2017, Intervenor Machlan withdrew his motion to intervene.  (Dkt. 85.)

Third, the *SPF* Intervenors filed their complaint on August 10, 2017—after the Parties reached a settlement and Plaintiffs had moved for preliminary approval.  They filed a Motion to Intervene on August 25, 2017.  (Dkt. 56.)  *SPF* Intervenors argued that, "[w]hile these two cases involve the some [*sic*] overlapping products, the claims and subject matter of these two cases could not be more different."  (Dkt. 57 at 1.)  Therefore, the *SPF* Intervenors sought leave to intervene to "be heard on whether the proposed release in *Mayhew* should be altered to preserve the rights of the *Carroll* Plaintiffs and the proposed *Carroll* class and subclasses to continue to litigate the claims pleaded in the *Carroll* Complaint."  (*Id.* at 2.)  Plaintiffs opposed the motion, given that "the settlement offers significant monetary relief which, taking into account the risk of litigation of the *SPF* claims and the claims in the present action is fair, reasonable, and adequate."  (Dkt. 88 at 2.)  Moreover, any issues raised in the *SPF* Intervenors' motion should be addressed through an

objection, not a motion to intervene. (*Id.*) Therefore, Plaintiffs respectfully requested the Court deny their Motion to Intervene. (*Id.* at 11.)

On October 23, 2017, the Court denied without prejudice the Motions to Intervene and set a deadline of December 1, 2017 for any renewed motions to intervene or oppose the preliminary settlement approval. (Dkt. 96.)

Critically, the complaints filed by the *Tear Free* Intervenors and the *SPF* Intervenors make false advertising claims regarding claims on the labeling of Babyganics' Products – products that are covered in the present Settlement and for which purchasers are obtaining both significant monetary and injunctive relief. The Settlement provides relief for <u>all purchasers</u> of Babyganics Products as it concerns the name of the Products themselves, "Babyganics." Accordingly, the *Tear Free* and *SPF* Intervenors are all Settlement Class Members and are entitled to the excellent relief provided for in the Settlement.

## II.     Summary of Proposed Settlement.

The Settlement's details are contained in the Amended Settlement Agreement signed by the Parties. The proposed Settlement offers a substantial recovery to the Settlement Class Members and does so through a claims process that does not impose an undue burden on Settlement Class Members.

Class Counsel are extremely experienced in class action litigation as well as the settlement and claims process and submit that the proposed Settlement is fair, adequate, and reasonable, and highly beneficial to the Settlement Class.

### A.  The Proposed Settlement Class.

The "Settlement Class" includes all persons or entities in the United States who made retail purchases of Covered Products, which includes any Babyganics product, regardless of product line, scent, and/or unit size, marketed and sold by Defendants in the United States, during the

Settlement Class Period. (Ex. 1, Weiner Decl. ("Amended Settlement Agreement") at 8.) Specifically excluded from the Settlement Class are: (a) Defendants' employees, officers, directors, agents, and representatives; (b) those who purchased Covered Products for the purpose of re-sale; (c) federal judges who have presided over this case; and (d) all Persons who have been properly excluded from the Settlement Class. (*Id.* § II.A.38.)

### B. The Settlement Benefits.

#### 1. Settlement Fund.

The Proposed Settlement provides that Defendants shall establish a Settlement Fund in the amount of $2,215,000, which shall be used to pay Eligible Claims. (*Id.* § IV.A.) The Proposed Settlement offers each eligible Settlement Class member the following:

First, Settlement Class Members shall be entitled to a cash refund in the amount of 100 percent of any purchase of a Covered Product for which a Proof of Purchase is provided. (*Id.* § IV.B.1.)

Second, Class Members who do not have a Proof of Purchase will be able to receive up to 50 percent of the purchase price and sometimes more. (*Id.* § IV.B.2.) The Initial Claim Amount will depend on the number and type of Eligible Products the Class Member purchased and is subject to *pro rata* upward or downward adjustment as described in the Amended Settlement Agreement. (*Id.* § IV.B.) Also, under no circumstances will any Residual Funds revert to Defendants. (*Id.* § IV.C.5.)

#### 2. Injunctive Relief.

In addition to the payment of significant monetary relief, Defendants have agreed to the following labeling and advertising changes to address the concerns raised by Plaintiffs and the proposed intervenors: (1) include a statement on the front label referring to the back label for

clarification of which ingredients are organic and which are not, as long as Defendants market the Covered Products as "Babyganics" on the front label; (2) remove the word "natural" from the front label of all Covered Products; (3) define "mineral-based" on the product page on the websites, explaining that "mineral-based" Sunscreen Products combine the protections of both mineral and non-mineral barriers, and provide references to Defendants' website on the back of the Sunscreen Products, for as long as Defendants market the Sunscreen Products as "mineral-based"; (4) for all Sunscreen Products labeled SPF 50+, Defendants will conduct testing of each batch of applicable sunscreen to confirm the batches match or exceed the active ingredient and levels expressed on the front of the package for a three-year period and send an affirmation of compliance to Plaintiffs' Counsel; (5) for certain Babyganics' products labeled "tear free," provide clarifications on the label regarding the use and safety of those products, including that the product should not be applied directly to the eye, that eyes should be flushed with water if product is applied to the eye, and that the product should be kept out of the reach of children absent adult supervision; and (6) refrain from using the statement "Plant-Based Ingredients" on pre-moistened wipes unless (a) the wipes substrate are made entirely from a material derived from plants or (b) the package lists the ingredients of the wipes substrate. (Amended Settlement Agreement § IV.D.)

### C. The Proposed Notice Plan.

The proposed Notice Plan is set forth in Section V of the Amended Settlement Agreement; Long-Form Notice (Ex. B, Amended Settlement Agreement); Short-Form Notice (Ex. C, Amended Settlement Agreement); and in the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program (Ex. F, Amended Settlement Agreement) ("Weisbrot Decl.").

The Parties have jointly agreed to have Angeion Group serve as the Claims Administrator in connection with the Amended Settlement Agreement. (Weisbrot Decl. ¶ 37.) The Claims Administrator will be responsible for effectuating and implementing the Notice Plan and

processing the Settlement Claims. (*Id.*) Further, the Claims Administrator will establish a Settlement Website that contains documents pertinent to the claims process and will implement and assist with the dissemination of notice of the Settlement. (*Id.* ¶¶ 37, 41.)

The Parties agree that, because the target audience spends approximately 17 hours per week on the Internet, media notice via the Internet will be both efficient and effective in reaching Settlement Class Members. (Weisbrot Decl. ¶ 14.) Specifically, the Notice Program, outlined in the Weisbrot Declaration, is an integrated notice effort incorporating state of the art internet banner notice utilizing multiple targeting layers specifically targeting potential Settlement Class Members. (*Id.* ¶ 17.) Thus, direct mail notice to class members is not feasible in this case and, given the robust data concerning the media consumption habits of the target audience, digital/online notice will be the most effective at informing potential Settlement Class Members of the Settlement. (*Id.* ¶ 15.) The technical mechanics of the proposed digital notice methodology, and the data supporting its effectiveness in reaching the target audience, are set forth in detail in the Weisbrot Declaration and exhibits to the Amended Settlement Agreement. (*See id.*) As attested to by Weisbrot, the multi-channel, digital notice component of the Notice Plan is project to reach 70 percent of the target audience (consisting of an estimated 30,966,000 individuals) with at least a 3.0 times impression frequency. (*Id.* ¶¶ 16, 25.)

The Notice Plan will also include creation of a Settlement Website, where members of the Settlement Class and others can view general information about this case, review relevant Court documents, view important dates and deadlines, contact the Settlement Administrator with questions, and submit Claim Forms electronically. (Amended Settlement Agreement § V.A.3; Weisbrot Decl. ¶ 3.)

The Claims Administrator will also establish a toll-free response unit for Settlement Class Members to gain information about the Settlement; establish a post office box for receipt of Claim Forms, exclusion requests, and any correspondence; and receive and maintain any Settlement Class Member correspondence regarding any opt-out requests or requests for exclusion. (*Id*. ¶ 24.)

The Parties agree that Babyganics will pay for the costs of notice and claims administration. (Amended Settlement Agreement at 15). The Amended Settlement Agreement also provides Class Members the opportunity to object to, or request exclusion from, the Settlement. (*Id*. § VI.)

### D. The Claims Process.

The Amended Settlement Agreement also establishes a claims process, the administration of which is undertaken by the Claims Administrator. (Amended Settlement Agreement § IV.)

Settlement Class Members shall be entitled to a cash refund in the amount of 100 percent of any purchase of a Covered Product for which Proof of Purchase is provided. If a Class Member does not have Proof of Purchase, the Class Member is entitled to recover for up to eight (8) Covered Product purchases. On the Claim Form, a Class Member must select the Covered Products purchased and the number of Covered Products purchased during the Class Period. The Initial Claim Amount depends on the number and type of Covered Products purchased and is subject to *pro rata* upward or downward adjustment as described in Section IV.C of the Settlement Agreement. (Amended Settlement Agreement § IV.C.). The Settlement Administrator will be provided a list of Covered Products and the value of the Covered Products based upon the MSRP. (*Id*. at § IV.B.2.) If the total amount of timely, valid, and approved Eligible Claims received by the Settlement Class Members exceeds the available relief, each eligible Settlement Class Members' Initial Claim Amount shall be proportionately reduced on a *pro rata* basis, such that the aggregate value of the cash payments does not exceed the Settlement Fund balance. (*Id*. § IV.C.) If there is a Residual Settlement Amount (as defined in the Settlement Agreement), it shall be used

to increase eligible Settlement Class Members' relief on a *pro rata* basis. (*Id.* § IV.C.4.) The Settlement Administrator shall determine each authorized Settlement Class Member's *pro rata* share based upon each Settlement Class Member's Claim Form and the total number of valid Claims. (*Id.*) *Pro rata* distributions from the Residual Settlement Amount shall first be paid to Class Members with valid proof of purchase, up to 100% value in total of their Claim. (*Id.*) If any Residual Amount remains after that distribution, the remainder will be distributed on a *pro rata* basis to Class Members without a Proof of Purchase, up to the 100 percent value in total of their Claim. (*Id.*) Accordingly, the actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all Claims have been calculated.

To receive Settlement relief, each Settlement Class Member must submit a valid and timely Claim Form either by mail or electronically. (*Id.* § IV.C.6.) The actual amount paid to individual Settlement Class Members will depend upon the number of valid Claims made for Covered Products purchased and a representation made under the penalty of perjury that the purchase(s) occurred in the United States during the Class Period. (*Id.*)

For claims without Proof of Purchase, each Settlement Class Member submitting a Claim Form shall sign (either by hand or electronic signature if the claim is submitted online) and submit a Claim Form that states to the best of his or her knowledge the total number and type of Covered Products that he or she purchased and the approximate date(s) of his or her purchases. (*Id.* § IV.C.7.)

The Claim Form will advise Settlement Class Members that, while Proof of Purchase is not required to submit a claim, the Settlement Administrator has the right to request verification or more information regarding the purchase of the Covered Products for the purpose of preventing fraud. (*Id.* § IV.C.8.) If the Settlement Administrator requests such verification and the Settlement

Class Member does not comply in a timely manner or is unable to produce documents or additional information to substantiate the information on the Claim Form and the claim is otherwise not approved, the Settlement Administrator may disqualify the claim. (*Id.*)

The Claims Period shall run for a period of time ordered by the Court, and last at least ninety (90) calendar days from the date of the first publication of Long-form Notice or Short-form Notice, whether online, via print publication, or via press release, whichever is earlier. (*Id*. § II.A.9.)

### E. Attorneys' Fees and Class Representative Compensation.

Defendants agree not to oppose Class Counsel's application for an award of Attorneys' Fees and Expenses in the Action that will not exceed $733,333.33. The payment is separate from and in addition to the class representative Service Awards to Plaintiffs and the relief afforded to the Settlement Class Members.

### Argument

### III. The Court Should Grant Preliminary Approval of the Settlement.

Class Counsel have worked steadfastly to reach a fair, reasonable, and adequate settlement. Plaintiffs and their counsel believe their claims are strong and are optimistic about obtaining class certification and succeeding on the merits. However, significant expense and risk attend the continued prosecution of the claims through trial and any appeals. In negotiating and evaluating the settlement, Plaintiffs and Class Counsel have taken these costs and uncertainties into account, as well as the risks and delays inherent in complex class action litigation. Additionally, in the process of investigating and litigating the Actions, Class Counsel conducted significant research on the consumer protection statutes at issue, as well as the overall legal landscape, to determine the likelihood of success and reasonable parameters under which courts have approved settlements in comparable cases. In light of the foregoing, Class Counsel believe the present settlement

provides significant relief to the Settlement Class members and is fair, reasonable, adequate, and in the best interests of the Settlement Class.

### A. Legal Standard.

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." FED. R. CIV. P. 23(E)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009).

The Second Circuit has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds*, 588 F.3d at 803 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Visa*, 396 F.3d at 117 (citation omitted); *see also Hadel v. Gaucho*, LLC, 2016 U.S. Dist. LEXIS 33085, at *4 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

"Preliminary approval is the first step in the settlement of a class action whereby the court 'must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement.'" *Manley v. Midan Rest. Inc.*, 2016 U.S. Dist.

LEXIS 43571, at *21 (S.D.N.Y. Mar. 30, 2016) (citations omitted). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (citations and internal quotation marks omitted); *accord Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266, at *13 (S.D.N.Y. Oct. 13, 2015). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Manley*, 2016 U.S. Dist. LEXIS 43571, at *8 (citation omitted); *accord Hadel*, 2016 U.S. Dist. LEXIS 33085, at *2; *Tart*, 2015 U.S. Dist. LEXIS 139266, at *5.

Here, the Amended Settlement Agreement is both procedurally and substantively fair and falls well within the range of possible approval.

### B. The Settlement is Procedurally Fair.

To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. N.Y. 2001) (citation omitted); *accord McReynolds*, 588 F.3d at 804; *see also Hall v. Prosource Techs., LLC*, No. 14-CV-2502 SIL, 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Apr. 11, 2016).

First, the negotiations were conducted at arm's-length, and indeed, were characterized by false starts, terminations of discussions, and the involvement of multiple parties with at times competing agendas. (*See* Decl. of Jason Sultzer ("Sultzer Decl.") ¶¶ 6-12; Weiner Decl. ¶¶ 13, 17.) Settlement discussions took place in person, in mediations, by email and telephonically over nine months, both with and without the assistance with the highly respected mediators David A. Rotman, of Haldman & Rotman in San Francisco, and Michael Young of JAMS in New York. (Sultzer Decl. ¶¶ 7-8, 11; Weiner Decl. ¶¶ 6-14, 17.) Participation of a highly qualified mediator

in settlement negotiations strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in precertification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 U.S. Dist. LEXIS 72826, at *9 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non-collusive."); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012).

Second, the discussions were undertaken by counsel who are well versed in complex litigation and, more specifically, in cases involving misrepresentations concerning allegedly organic and natural products. (*See* Sultzer Decl. ¶ 17; Weiner Decl. ¶ 23; Decl. of Katherine Van Dyck ("Van Dyck Decl.") ¶ 11.)

Third, Plaintiffs and their counsel conducted a thorough investigation and evaluation of the claims and defenses prior to filing the Action and continued to analyze the claims throughout the pendency of the case. (*See*, *e.g.*, Sultzer Decl. ¶¶ 3-6; Weiner Decl. ¶ 19; Van Dyck Decl. ¶ 8.) Class Counsel conducted significant discovery during the course of mediation, including obtaining sales data, average purchase price, net sales information, marketing information regarding the reasons why consumers purchase Defendant's products, as well as information regarding internal product testing conducted by Defendant. *Id*. Through this investigation, pre-mediation and confirmatory discovery, and ongoing analysis, and through litigation of Plaintiffs' claims before this Court, Class Counsel obtained an understanding of the strengths and weaknesses of the Action.

For the foregoing reasons, the Amended Settlement Agreement is procedurally fair.

### C. The Settlement is Substantively Fair.

To demonstrate the substantive fairness of a settlement agreement, a party must show that the factors the Second Circuit set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), weigh in favor of approving the agreement. *Charron*, 731 F.3d at 247. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463). The *Grinnell* factors are used to evaluate settlements at the final approval stage, but they can also be looked to for guidance at the preliminary approval stage, at which Plaintiffs have a lower burden. Here, the *Grinnell* factors overwhelmingly favor preliminary approval of the Amended Settlement Agreement.

### D. The Complexity, Expense, and Likely Duration of Litigation.

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley*, 2016 U.S. Dist. LEXIS 43571, at *9 ("Most class actions are inherently complex [.]"). Should the Court decline to approve the proposed settlement and litigation were to resume, it would be costly, complex, and time-consuming.

First, contested class certification (and possibly subsequent decertification) motions would include battles over which law or laws should be applied to the claims of class members, the mechanism by which damages stemming from an unwarranted price premium could be calculated

on a class wide basis, and whether individual purchasing decisions were relevant and/or would predominate over class wide issues. Class issues involving damages would likely generate expert discovery and *Daubert* motions as well. Although Plaintiffs are confident in their ultimate success in certifying a class based on this case's similarities to another matter before a sister court in this circuit, a positive ruling would no doubt be challenged by a decertification motion or on appeal. Defendants would also contest the ascertainability of the Class. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 2016 U.S. Dist. LEXIS 137780 (S.D.N.Y. Oct. 4, 2016) (certifying class of consumers who purchased products labeled "Active Naturals").

Third, in addition to the expected discovery concerning the manufacturing of the products and the sources and formulation of the ingredients, there would likely be lengthy and expensive expert discovery and testimony about the meaning of the terms "natural," "organic," "Tear-Free," "50+ SPF," and "mineral-based" to a reasonable consumer. These issues would generate *Daubert* motion practice as well. Each step towards trial would be subject to Defendant's vigorous opposition and possible interlocutory appeal. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources. These litigation efforts would be costly to all Parties and would require significant judicial oversight.

Although Plaintiffs believe they would ultimately prevail, "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 U.S. Dist. LEXIS 43571, at *9 (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.*

For all of these reasons, this factor weighs strongly in favor of preliminary approval.

### E. The Reaction of the Class.

As noted above, three sets of class members – the *Tear Free* Intervenors, *SPF* Intervnors, and Proposed Intervenor Machlan – filed motions to intervene in this matter after Plaintiffs filed their initial motion for preliminary approval. Proposed Intervenor Machlan has withdrawn his motion to intervene. (Dkt. 85.) Though Plaintiffs invited the *Tear Free* and *SPF* Intervenors to participate in a mediation in October, they chose not to attend. (Amended Settlement Agreement § I.O; Weiner Decl. ¶ 17.) Nonetheless, those intervenors are, as Plaintiffs point out in their oppositions to the motions to intervene, objectors whose complaints about the Settlement are premature at this point. *See*, *e.g.*, *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *7 (S.D.N.Y. July 15, 2014).

Moreover, the issues raised in the Motions to Intervene have been resolved in the Amended Settlement Agreement. First, the *Tear Free* Intervenors argued their lawsuit "seeks to put an end to Babyganics' deceptive misrepresentations regarding the so-called 'tear free' quality of its bath products." (Dkt. 50-1 at 14.) The Amended Settlement Agreement provides that for Defendants' bath products labeled as "tear free," "Defendants will clarify on the back label that product should not be applied directly to the eye, that eyes should be flushed with water if product is applied to the eye, and that the product should be kept out of reach of children absent adult supervision." (Amended Settlement Agreement § IV.D.5.)

Second, Intervenor Machlan argued that the injunctive relief in this case did not address his claims that Defendants made misrepresentations that its products were "plant based" when in fact they contained synthetic ingredients. (Dkt. 52-1 at 4.) He later withdrew his objection. (Dkt. 85.) Nonetheless, the Amended Settlement Agreement addresses this concern, providing that Defendants "will not use a label statement 'Plant-Based Ingredients' on pre-moistened wipes . . .

unless (1) the wipes substrate are made entirely from a material derived from plants or 92) the package lists the ingredients of the wipes substrate." (Amended Settlement Agreement § IV.D.6.)

Third, the *SPF* Intervenors argued its claims that Defendants' representations on the product label claiming that the Defendants' "SPF 50+" sunscreen are, in fact, "SPF 50+" are false or misleading in that the actual SPF rating of the product was far lower, are entirely separate and unrelated to this case. (Dkt. 56 at 1-2.) However, the Amended Settlement Agreement addresses these claims. Specifically, Defendants have agreed to conduct batch testing of their Sunscreen Products labeled as SPF 50+ to confirm they match or exceed the active ingredient and levels expressed on front of package prior to expiration date. (Amended Settlement Agreement § IV.D.4.) They also have agreed that for each year for three years, they will send Plaintiffs' Counsel an affirmation they are in compliance with this provision. (*Id.*)

Thus, all of the issues raised by the Proposed Intervenors have been addressed by the Amended Settlement Agreement. With respect to the remainder of the Class, [i]t is premature to address the reaction of the Settlement Class to the Settlement.

### F. The Stage of Proceedings and Amount of Discovery Completed.

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

Here, investigation and pre-mediation and confirmatory discovery have "advanced sufficiently to allow the parties to resolve the case responsibly." *Manley*, 2016 U.S. Dist. LEXIS 43571, at *9. Class Counsel have conducted significant pre-mediation and confirmatory discovery related to Plaintiffs' claims, including obtaining information regarding Defendants' internal

laboratory testing, and reviewing of sales, marketing, and pricing data. (*See* Sultzer Decl. ¶ 6; Weiner Decl. ¶¶ 10-11.) Consequently, Plaintiffs had sufficient information to evaluate the claims of the class. *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class' in reaching a settlement.").

### G. The Risks of Establishing Liability and Damages.

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 RER, 2011 U.S. Dist. LEXIS 21102, at *10 (E.D.N.Y. Feb. 18, 2011) (citation omitted). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00 Civ. 9806 SHS, 2007 U.S. Dist. LEXIS 22342, at *28 (S.D.N.Y. Mar. 27, 2007) (citation omitted); *accord Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *14.

Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendants continue to deny Plaintiffs' allegations, and should this matter proceed, they will vigorously defend themselves on the merits. Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the labeling on the Products, a jury might not agree.

In addition, with respect to the calculations of damages, attributing a given price premium to a single component of the label is a complicated process. In *Goldemberg*, the Court denied the defendants' *Daubert* motion and held that the plaintiffs' methodology for their price premium calculation was capable of matching the plaintiffs' liability case to their damages case for class certification purposes. *Goldemberg*, 2016 U.S. Dist. LEXIS 137780, at *40-41. Plaintiffs are confident they could make a similar showing here. However, whether the methodology would survive further challenge on the merits is an open question.

For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages strongly support preliminary approval.

### H.  The Risk of Maintaining Class Action Status Through Trial.

The Actions settled before rulings on class certification, and the current certification is for settlement purposes only.  As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs may be required to proffer a suitable mechanism for calculating damages in the form a classwide price premium.  While Plaintiffs believe they could establish the existence of such a premium to the Court's satisfaction, this proposed Settlement eliminates that risk.

Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160(1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *see also Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831 LHK, 2014 U.S. Dist. LEXIS 157578 (N.D. Cal. Nov. 6, 2014) (decertifying Rule 23(b)(3) class in consumer fraud case).  Given the risks, this factor weighs in favor of final approval. *See, e.g.*, *Mills v. Capital One, N.A.*, No. 14 Civ. 1937 HBP, 2015 U.S. Dist. LEXIS 133530, at *6 (S.D.N.Y. Sept. 30, 2015).

### I.  The Ability of Defendants to Withstand a Greater Judgement.

Plaintiffs believe that Defendants do, in fact, have the ability to pay more than a $2,215,000 judgement.  However, that is not the proper analysis.  "Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement."  *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 AKT, 2014 U.S. Dist. LEXIS 158415, at *25 (E.D.N.Y. Nov. 10, 2014) (citations omitted).  A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 RLE, 2014 U.S. Dist. LEXIS 60695, at *20 (S.D.N.Y. Apr. 30, 2014) (citation omitted).  Although Defendants may be

able to withstand a greater judgment, the agreed to settlement fund is fair and adequate when weighing the likelihood of success and overall value of Settlement Class Member's individual damages should this Action proceed to trial. For these reasons, this factor is neutral.

### J. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation.

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Visa*, 396 F.3d at 119 (citation omitted). "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941 SLT, 2015 U.S. Dist. LEXIS 17358, at *17 (E.D.N.Y. Jan. 16, 2015) (citation omitted).

Here, the relief for which the Amended Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and in light of all the attendant risks of litigation. The gravamen of the Action is that Defendants are deceiving consumers in labeling and marketing its Babyganics' Products. The injunctive relief for which the Settlement provides—*i.e.*, written clarification on the product labeling as to which ingredients are organic and which are not, the removal of the word "natural" from the front label of all Products, clarification on the Defendant's website regarding the term "mineral based," required batch testing of the Sunscreen Products, written clarification regarding the use of certain "Tear-Free" products, and removal of the statement "Plant-Based Ingredients" from certain Products unless Defendants meet certain conditions—is an excellent outcome both for the Settlement Class members and for future consumers. It also resolves all of Plaintiffs and the Proposed Intervenors' claims.

Furthermore, the cash compensation to which eligible Settlement Class members will be entitled in the event the Court approves the Settlement goes a significant way toward compensating Settlement Class members for the damages they incurred on account of Defendant's allegedly deceptive organic, "natural," and "mineral-based" representations. The Settlement permits a class member to recover, subject to pro rata reduction if the total value of claims exceeds the $2,215,000 settlement fund:

- a full refund for every Babyganics purchase, with no limitation on quantity, for which the class member has a proof of purchase, and

- a full or partial refund for up to eight additional purchases. (Amended Settlement Agreement at 16-18.)

Courts in this District have recently approved comparably sized settlements in product-labeling class actions. *See*, *e g.*, Order Granting Final Approval of Class Action Settlement, *Vincent v. People Against Dirty, PBC*, No. 7:16-cv-6936 (S.D.N.Y. June 20, 2017) (approving $2.8 million fund); Order Approving Class Action Settlement and Final Judgment, *Rapoport-Hecht v. Seventh Generation Inc.*, No. 7:14-cv-9087 (S.D.N.Y. Apr. 28, 2017) (approving $4.5 million fund).

Because the Settlement Fund represents a significant portion of the total potential damages in this case, the settlement is both fair and reasonable. *See Grinnell, supra,* at 455, n.2 (in theory, even a recovery of only a fraction of one percent of the overall damages could be a reasonable and fair settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 229 (E.D.N.Y. 2013) (granting final approval to antitrust class action settlement representing approximately 2.5 percent of the highest damages estimate as "within the range of reasonableness in light of the best possible recovery and in light of all the attendant risks of litigation").

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Not only might ongoing litigation not result in an increased

benefit to the Settlement Class, it would lead to substantial expenditure by both Parties and Court resources. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness." Class Counsel have achieved an excellent recovery considering the merits of the Settlement weighed against the cost and risks of further litigation.

There is also the risk associated with the calculation of the price premium. Once Plaintiffs established a suitable means to calculate the price premium on a class wide basis, there remains the calculation of the actual premium itself. A trier of fact may find a lower premium or, although, Plaintiffs believe this outcome unlikely, none at all.

Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Amended Settlement Agreement is fair, adequate, and reasonable. As such, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

## IV. The Court Should Certify the Proposed Class Pursuant to Rule 23(a) and 23(b)(3) for Purposes of Settlement.

"Provisional settlement[,] class certification[,] and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Amended Settlement Agreement, and setting the date and time of the final approval hearing." *Palacio v. E*Trade Fin. Corp.*, No. 10-cv-4030, 2012 U.S. Dist. LEXIS, at *3 (S.D.N.Y. Mar. 12, 2012) (citation omitted). Here, the proposed settlement class seeks both monetary damages and injunctive relief, so Rule 23(b)(3) and 23(b)(2) must both be satisfied. For the reasons set forth below, this proposed settlement class meets all Rule 23 requirements for certification in this context.

## V. The Proposed Settlement Classes Satisfy Rule 23(a).

Rule 23(a) sets forth four prerequisites for class certification:

> (1) that the class is so numerous that joinder of all parties is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  Unlike in a contested class certification process, which is a precursor to trial, a proposed settlement class does not require a showing that a trial on class claims would be manageable—precisely because there will be no trial that needs to be managed.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

### A.  Numerosity

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable."  FED. R. CIV. P. 23(a)(1); *Long v. HSBC USA Inc.*, No. 14-cv-6233, 2015 U.S. Dist. LEXIS 122655, at *15 (S.D.N.Y. Sept. 11, 2015).  "'Numerosity is presumed for classes larger than forty members.'"  *Id.* (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.2014)).  Here, the potential class consists of hundreds of thousands of consumers spread across the country.  (Van Dyck Decl. ¶ 9.)  Numerosity is therefore established.

### B.  Commonality

The second Rule 23(a) requirement is the existence of common questions of law or fact. FED. R. CIV. P. 23(a)(2); *Long*, at *5.  "[P]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system."  *Id.* at *6 (quoting *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 126 (E.D.N.Y. 2003)).  "Even a single common legal or factual question will suffice."  *Id.* (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014)).

The issues of law and fact that are common to the class here include: (1) whether Defendants falsely represented that their Products are organics; (2) whether Defendants falsely

represented the ingredients in their Sunscreens; (3) whether Defendants falsely represented that their Sunscreens have an SPF of 50 or higher; (4) whether Defendants falsely represented their Bath Products are non-irritating and non-harmful to the eyes of infants and children; (5) whether Defendants falsely represented their Products are natural; (6) whether Defendants engaged in fraudulent, unfair, unlawful, or deceptive business practices; (7) whether a reasonable consumer would rely on or be deceived by Defendants business practices; and (8) whether Plaintiffs and the Nationwide Class are entitled to nationwide injunctive relief. Similar questions have been found to satisfy the commonality requirement in other class actions. *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-cv-1470, 2017 U.S. Dist. LEXIS 35703, at *44-45 (D. Conn. Mar. 13, 2017) (certifying Rule 23(b)(3) class of purchasers of sunscreens and other "natural" baby products, including "Aveeno Baby Natural Protection Mineral Block"); *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x 531, 533-34, 535 (9th Cir. 2016) (reversing summary judgment in Dole's favor on California UCL claims and affirming certification of Rule 23(b)(2) and 23(b)(3) classes where plaintiffs alleged that "All Natural Fruit" label is deceptive where "products contain synthetic citric acid and ascorbic acid); *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082, 2014 U.S. Dist. LEXIS 162038, at *62-63 (N.D. Cal. Nov. 18, 2014) (certifying multiple classes of purchasers of personal care products with misleading labels, including products that were not purchased by the named class representatives). The commonality requirement is similarly met here.

### C. Typicality

"Rule 23(a)'s third requirement, typicality, ensures that maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Long*, 2015 U.S. Dist. LEXIS 122655, at *17 (internal quotations and citations omitted). "The typicality

requirement is satisfied where 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (citation omitted). The requirement often merges with Rule 23(a)'s commonality requirement. *Id.*

Here, Plaintiffs and the Settlement Class members all bought Products bearing the same product name, "Babyganics," and the same representation, "Mineral-Based," natural, "SPF 50+," and "Tear-Free." Plaintiffs have also linked this branding to their fraud and misrepresentation claims. *Brown*, 2014 U.S. Dist. LEXIS 162038, at *41 ("The named plaintiffs here do 'link' their claims to those arising from products that they themselves did not buy, and the challenged representations are not 'unique' to any product."). They therefore satisfy Rule 23(a)'s typicality prong.

### D. Adequacy

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the class. FED. R. CIV. P. 23(a)(4). "Adequacy is two fold the: proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Long*, 2015 U.S. Dist. LEXIS 122655, at *18 (citations omitted). The interests of Plaintiffs and the putative class members are aligned because they all are pursuing the claim that they suffered similar injury in the form of purchasing various Products bearing the same false labels, and all class members seek the same relief.

As to the second inquiry, Plaintiffs and Class Counsel have demonstrated that they will prosecute this action vigorously and will continue to do so. Plaintiffs have reviewed the Settlement Agreement and given their approval. (Amended Settlement Agreement at 41.) Additionally, Class Counsel are well qualified, possess no conflicts of interest, and have already proven capable of prosecuting this action vigorously on behalf of the class. Plaintiffs' counsel have litigated this

Action since its inception and did so on behalf of both the putative injunctive and damages class members. All firms that seek to represent the class have extensive experience in handling complex commercial litigation, including class actions. (Sultzer Decl. ¶ 17; Weiner Decl. ¶ 23; Van Dyck Decl. ¶ 11.) Adequacy is therefore met.

## VI. The Class Claims Satisfy the Prerequisites of Rule 23(b)(3).

Plaintiffs seek to certify the following settlement class under Rule 23(b)(3):

> all persons or entities in the United States who made retail purchases of Covered Products during the Settlement Class Period. Specifically excluded from the Settlement Class are: (a) Defendants' employees, officers, directors, agents, and representatives; (b) those who purchased Covered Products for the purpose of re-sale; (c) federal judges who have presided over this case; and (d) all Persons who have been properly excluded from the Settlement Class.

(Amended Settlement Agreement § II.A.38.) Rule 23(b)(3) requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Both are met for the settlement class in this case.

### A. Common Legal and Factual Questions Predominate.

"Rule 23(b)(3) requires only 'a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.'" *In re Scotts EZ Seed Litig.* ("*EZ Seed*"), 304 F.R.D. 397, 408 (S.D.N.Y. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 459 (2013)). As noted above, "[c]lasswide evidence w[ould] be used to establish whether [Defendants'] labeling . . . was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances." *EZ Seed*, 304 F.R.D. at 409. It would likewise be used to prove that Plaintiffs and the putative class members "suffered economic harm when they paid for a worthless product, or when they paid a premium" for Defendants' products. *Id.* Moreover, "[r]elief under the UCL and FAL is available without

individualized proof of 'reliance and injury, so long as the named plaintiffs demonstrate injury and causation.'" *Id.* at 410. Finally, individualized questions of damages need not defeat predominance in a class action. *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006) (noting that a number of management tools are available to handle individualized damages issues). As a result, the predominance prong of Rule 23(b)(3) is satisfied.

### B.  A Class Action is Superior to Other Methods of Adjudication.

A class action must also be "superior to other available methods for fairly and effectively adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "When . . . 'proceeding individually would be prohibitive for class members with small claims . . . the class action device is frequently superior to individual actions.'" *EZ Seed*, 304 F.R.D. at 415 (citation omitted). Here, the putative class members purchased Products that generally cost between $4.00 and $50.00. (Van Dyck Decl. ¶ 9.) Such a sum hardly justifies the time and expense of civil litigation, attorneys' fees, and experts. For these reasons, the superiority prong of Rule 23(b)(3) is satisfied.

### VII.    The Class Claims Satisfy the Prerequisites of Rule 23(b)(2).

Plaintiffs also seek to certify the following nationwide injunctive class under Rule 23(b)(2):

> all persons or entities in the United States who made retail purchases of Covered Products during the Settlement Class Period. Specifically excluded from the Settlement Class are: (a) Defendants' employees, officers, directors, agents, and representatives; (b) those who purchased Covered Products for the purpose of re-sale; (c) federal judges who have presided over this case; and (d) all Persons who have been properly excluded from the Settlement Class.

(Amended Settlement Agreement § II.A.38.) Certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). "When plaintiffs move 'for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages,' the court must 'assess whether (b)(2) certification is appropriate in light of the relative importance of

the remedies sought, given all of the facts and circumstances of the case.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 237 (S.D.N.Y. 2010). Moreover, certifying "'both a Rule 23(b)(2) class and a Rule 23(b)(3) class in order to achieve both equitable and legal relief . . . avoids the due process concerns raised by the inclusion of monetary relief under the framework of a(b)(2) class." *Id*. at 238 (citation omitted).

Clearly, Defendants' challenged conduct "was directed at all members of the proposed settlement class." *Meredith Corp., LLC v. SESAC*, LLC, 87 F. Supp. 3d 650, 660 (S.D.N.Y. 2015). "This lawsuit is being driven largely by Plaintiffs' desire to obtain class-wide injunctive relief." *Charron*, 269 F.R.D. at 237. Namely, Plaintiffs have alleged that the trademark "Babyganics" which is found on all of Defendants' Products, is misleading. "[T]he contemplated settlement provides the future conduct relief necessary to protect all members of the proposed settlement class." *Meredith Corp.*, 87 F. Supp. 3d at 660. First, Defendants have agreed to change their labels to provide clarity as to "which ingredients are organic and which are not." (Amended Settlement Agreement § IV.D.1.) Second, Defendants have agreed to remove the term "natural" from their Products' labels and the phrase "Plant-Based Ingredients" from a subset of those products. (*Id*. § IV.D.6.) Third, Defendants will provide additional warnings on their Bath Products regarding application of those products to the eye. (*Id*. § IV.D.5.) Fourth, Defendants will more accurately define the term "mineral based" on its website, so consumers understand that Defendants' sunscreens include both mineral and non-mineral barriers. (*Id*. at § IV.D.3.) Moreover, Defendants will provide a link to that website on its Sunscreen labels. (*Id*.) Fifth, Defendants will be required to perform quality control testing on its sunscreens at defined intervals to ensure they have a minimum SPF of 50. (*Id*. at § IV.D.4.) This relief directly remedies Plaintiffs' chief concern that Defendants' labeling is false and deceptive, and it protects the

Settlement Class Members from future harm.  Moreover, the injunctive relief is being offered in conjunction with monetary relief that will fully compensate the Settlement Class Members.  *See supra* Section III.

For these reasons, the requirements of Rule 23(b)(2) are easily satisfied here.

**VIII.    The Form and Content of the Proposed Notice to the Class are Sufficient.**

"The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." FED. R. CIV. P. 23(e)(1).  Additionally, notice of certification of a Rule 23(b)(3) class must be given "to all members who can be identified through reasonable effort" and describe:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

Here, the Parties have agreed that notice will be administered by a professional claims administrator.  As described more fully in the Weisbrot Declaration and exhibits to the Amended Settlement Agreement, the Claims Administrator here has designed a digital notice campaign that is targeted to reach 70 percent of the broad target audience with at least a 3.0 times frequency. (Weisbrot Decl. ¶ 9.)  This notice campaign takes account of the robust data regarding media consumption by the target audience and is specifically directed at online media channels visited by that audience.  (*See id.* ¶¶ 14-15.)

Further, upon the Court's grant of Preliminary Approval to the proposed Settlement, the Claims Administrator will create a Settlement Website dedicated to the Settlement with a variety of case-related documents, including a Claim Form capable of being completed and submitted

electronically.  (*Id.* ¶ 23.)  In sum, the notice plan set forth in the Settlement satisfies the requirements of Rule 23(e)(1).

Furthermore, the notice program complies with Rule 23 and Due Process because, among other things, it informs the Settlement Class of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Settlement Class and claims asserted; (3) the binding effect of a judgment if the  Settlement Class Member does not request exclusion; (4) the process for objection and exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the named Plaintiffs' request for a Service Award and reimbursement of their attorneys' fees and costs; (6) the procedure for submitting Claims to receive settlement benefits; and (7) how to contact Class Counsel to make inquiries. FED. R. CIV. P. 23(c)(2)(B). As such, the Court should approve the Notice Plan to the proposed Settlement.

Finally, Rule 23's notice requirement is satisfied by the proposed multi-faceted Notice Plan proposed, given that it is an integrated notice effort incorporating state of the art Internet banner notice utilizing multiple targeting layers specifically targeting potential Settlement Class Members.  The type of notice proposed here is similar to that which has been approved by many other courts.  *See*, *e.g.*, *Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135 (D. Mass. 2004) (noting the effectiveness of settlement website as means of publication); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) (finding that publication notice was the best notice practicable and finding it sufficient to comport with Rule 23); *Elkind v. Revlon Consumer Prods. Corp.*, No. CV 14-2484 (JS) (AKT), 2017 U.S. Dist. LEXIS 24512, at *55-57 (E.D.N.Y. Feb. 17, 2017), *r&r adopted in*, 2017 U.S. Dist. LEXIS 46753 (E.D.N.Y. March 29, 2017); *Bowling v. Pfizer*, 144 F. Supp. 3d 945, 944-45 (S.D. Ohio 2015);

*Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2013 U.S. Dist. LEXIS 153725, at *10-11 (N.D. Cal. Oct. 25, 2013); *Weeks v. Kellogg Co.*, No. CV 09-08102, 2011 U.S. Dist. LEXIS 155472, at * 40-41 (C.D. Cal. Nov. 23, 2011).

The Notice Plan fairly apprises Settlement Class Members of their rights with respect to the Settlement and represents the best notice practicable under the circumstances and complies with Rule 23 and due process. Therefore, the Court should approve the proposed form of notice.

Dated: November 21, 2017            **CUNEO GILBERT & LADUCA, LLP**

By: *s/ Charles J. LaDuca*
Charles J. LaDuca (Bar ID # 3975927)
Katherine Van Dyck
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
Fax: (202) 789-1813
*charlesl@cuneolaw.com*
*kvandyck@cuneolaw.com*

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer (Bar ID #: JS4546)
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
*sultzerj@thesultzerlawgroup.com*

**HALUNEN LAW**
Melissa S. Weiner
Amy E. Boyle *(admission forthcoming)*
1650 IDS Center
80 South Eight Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
*Weiner@halunenlaw.com*
*Boyle@halunenlaw.com*