UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TANYA MAYHEW, TANVEER ALIBHAI, and :
TARA FESTA, individually on behalf of :
themselves and all others similarly situated, :          **OPINION AND ORDER**
                                    Plaintiffs, :
                                                 :          16 CV 6981 (VB)
v.                                               :
                                                 :
KAS DIRECT, LLC, and S.C. JOHNSON & :
SON, INC., :
                                    Defendants. :
-------------------------------------------------------------x

Briccetti, J.:

        Plaintiffs Tanya Mayhew, Tanveer Alibhai, and Tara Festa bring this action, on behalf of

themselves and members of a purported nationwide class, asserting claims of (i) deceptive

business practices in violation New York General Business Law ("GBL") § 349; (ii) false

advertising in violation of GBL § 350; (iii) unlawful, unfair, and fraudulent business practices in

violation of California's Unfair Competition Law; (iv) violation of California's False

Advertising Law; (v) violation of Florida's Deceptive and Unfair Trade Practices Act; (vi)

breach of New York's warranty laws; (vii) violation of the Magnuson-Moss Warranty Act, 15

U.S.C. § 2301, et seq.; (vii) violation of the consumer protection and trade practices laws of

thirty-nine additional states; and (ix) unjust enrichment.

        Now pending before the Court are two motions.

        First, plaintiffs seek an order (i) granting preliminary approval of the parties' amended

settlement agreement; (ii) approving the form and manner of notice to the settlement class; (iii)

directing notice to the settlement class; (iv) enjoining the prosecution of litigation asserting any

claims released in the settlement agreement; and (v) scheduling a final fairness hearing for the

consideration and approval of the settlement.  (Doc. #99).

Second, Tarina Skeen, Cheyenne Blanusa, Malissa Brown, Natalie Vidal, and Christina Timmermeier, named plaintiffs in a separate class action pending in this district, <u>Skeen, et al. v. KAS Direct, LLC d/b/a Babyganics</u>, 17 CV 4119 (RJS), seek an order permitting them to intervene. (Doc. #113).

For the following reasons, plaintiffs' motion is GRANTED, and proposed intervenors' motion is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).

## BACKGROUND

This putative class action was commenced by plaintiffs Mayhew, Alibhai, and Festa, on behalf of themselves and others similarly situated.

Plaintiffs purchased household cleaning and baby care products sold by defendants under the trade mark "Babyganics." According to plaintiffs, the name Babyganics is intended to convey to consumers that defendants' products are organic, although the products in fact contain synthetic ingredients. Further, plaintiffs allege defendants' Babyganics sunscreens are labeled "mineral-based," but in fact contain non-mineral, chemical compounds. In addition, plaintiffs allege defendants' Babyganics products are marketed as "natural," despite the inclusion of synthetic ingredients.

Plaintiffs allege consumers paid a premium for Babyganics products in reliance on defendants' claims that the products were organic, mineral-based, or natural, and were injured in the amount of the purchase price or premium paid.

I.    <u>Procedural History</u>

Before commencing this action, plaintiffs' counsel sent a demand letter and proposed complaint to defendant KAS Direct, LLC ("KAS"). The parties corresponded for several months

regarding potential settlement of plaintiffs' claims, and on August 10, 2016, attended a mediation with David Rotman, Esq., of Gregorio, Haldeman & Rotman. The parties were unable to agree, and plaintiffs filed the initial complaint in this action on September 7, 2016.

On March 30, 2017, after exchanging discovery, including defendants' sales figures, product lines, internal testing information, and consumer surveys, the parties attended a second mediation, this time with Michael Young, Esq., of JAMS in New York. The parties did not agree to a settlement, but continued negotiating after the mediation. Following approximately twelve weeks of continued discussions, the parties reached an agreement on relief for the class, after which they agreed to attorneys' fees as well as monetary awards for the named plaintiffs.

On August 4, 2017, plaintiffs filed an amended complaint (Doc. #37) and a motion for preliminary approval of the settlement. (Doc. #38).

Subsequently, three groups of proposed intervenors moved to intervene: (i) Skeen, Blanusa, Brown, Vidal, and Timmermeier (the "Tear Free Intervenors") moved on August 11, 2017; (ii) David Machlan moved on August 18, 2017; and (iii) Laura Carroll, Katharine Exo, Armand Ryden, and Katharine Shaffer (the "SPF Intervenors") moved on August 25, 2017.

On October 5, 2017, the parties attended a third mediation with Mr. Young of JAMS. Counsel for the proposed intervenors were invited to attend, but only Machlan's counsel did. Afterward, the parties advised the Court they intended to amend their motion for preliminary approval of the settlement agreement to address the proposed intervenors' claims.

Plaintiffs filed the instant motion for preliminary approval on November 21, 2017, and only the Tear Free Intervenors have renewed their motion to intervene.

III.    Tear Free Intervenors

As noted above, the Tear Free Intervenors are named plaintiffs in Skeen, et al. v. KAS Direct, LLC d/b/a Babyganics, 17 CV 4119 (RJS).

The complaint in Skeen alleges KAS's Babyganics bath products are labeled "tear free," gentle, non-allergenic, and safe for infants and children when in fact they contain chemicals and ocular irritants. Further, the complaint allege KAS has received numerous consumer complaints regarding injuries cause by its "tear free" products, but has not recalled, relabeled, or reformulated them.  The complaint alleges consumers are misled by Babyganics false and deceptive "tear free" labeling, and asserts claims for fraud, negligent misrepresentation, unjust enrichment, violation of Florida and California's consumer protection laws, and violation of the Magnuson-Moss Warranty Act.

On November 7, 2017, proceedings in Skeen were stayed pending the outcome of plaintiffs' motion for preliminary approval of the settlement agreement in this action.  (17 CV 4119, Doc. #36).

IV.    Proposed Settlement

The proposed amended settlement (the "Agreement") is on behalf of a class of all persons or entities in the United States who made retail purchases of any Babyganics product marketed and sold in the United States between September 7, 2010, and the date the Court enters preliminary approval.

The Agreement provides for a settlement fund of $2,215,000.  Class members are entitled to receive a 100% refund for any Babyganics products for which they have proof of purchase, and a partial refund for up to eight Babyganics products for which they do not have proof of

purchase.  Refunds are subject to pro rata upward or downward adjustment, depending on the number of claims filed.

In addition, the Agreement provides for changes to the labeling and advertising of Babyganics products.  First, for as long as defendants' products are marketed as Babyganics, the front label of the products will include a statement referring consumers to the back label for a list of which ingredients are organic and which are not.  Second, the front label of Babyganics products will not include the word "natural."  Third, defendants will maintain a product page on their website explaining that sunscreens marketed as "mineral-based" also include chemical ingredients, and will include a reference to the website on the back label of all sunscreen products.  Fourth, defendants will conduct batch testing of all "SPF 50+" sunscreens to ensure active ingredient levels match or exceed those expressed on the package, and will report the results of such tests to plaintiffs' counsel.  Fifth, certain Babyganics products labeled "tear free" will include a back label indicating that the products should not be applied directly to the eye, that eyes should be flushed with water if the product is applied directly to the eye, and that the product should be kept out of reach of children absent adult supervision.  Finally, defendants will not use the statement "Plant-Based Ingredients" on the label of its pre-moistened wipe products unless the wipe substrates are made with material derived entirely from plants or the package lists the ingredients of the wipe substrate.

The Agreement also provides that the following will be paid out of the settlement fund: (i) $3,500 service awards to each of the named plaintiffs; (ii) up to $416,475.50 to the settlement administrator for notice and claim administration expenses; and (iii) up to $733,333.33 in attorneys' fees.

In addition, with the exception of personal injury claims, the Agreement purports to release the following:

> any and all suits, actions, claims, liens, demands, actions, causes of action, obligations, rights, damages, or liabilities of any nature whatsoever, contingent or absolute, matured or unmatured, including Unknown Claims (as defined below), whether arising under any international, federal, state, or local statute, ordinance, common law, regulation, principle of equity or otherwise, that actually were, or could have been, asserted in the Litigation, including, but not limited to, claims which are based on any assertion or contention that the packaging of Covered Products, including the labels, or Advertising based on the content of those labels were inaccurate, misleading, false, deceptive or fraudulent.

(Wiener Decl. Ex. 1: Agreement ¶ 32). In addition, the Agreement specifically releases the claims asserted by proposed intervenor Machlan in Machlan v. S.C. Johnson, Inc., 17 CV 2442 (N.D. Cal.), the Tear Free Intervenors in Skeen, and the SPF Intervenors in Carroll v. S.C. Johnson & Son, Inc., 17 CV 5828 (N.D. Ill.).

## DISCUSSION

I.     Motion to Intervene

Tear Free Intervenors assert they are entitled to intervene as of right because have an interest in the action that may be impaired if the settlement is preliminarily approved, and they are not adequately represented. The Tear Fear Intervenors also assert permissive intervention is appropriate.

The Court disagrees.

With regard to intervention as of right, Fed. R. Civ. P. 24(a)(2) provides:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Proposed intervenors under this Rule "must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."  United States v. City of N.Y., 198 F.3d 360, 364 (2d Cir. 1999) (internal quotation omitted).  "Failure to satisfy any one of these requirements is a sufficient ground to deny the application."  Id. (internal quotation marks omitted).

The Tear Free Intervenors made retail purchases of Babyganics products marketed and sold in the United States between September 7, 2010, and the present date.  See 17 CV 4119, Doc. #22: Am. Compl. ¶¶ 10−15.  Thus, they are members of the proposed class, and may protect their interests by objecting at the fairness hearing, or opting out of the settlement altogether to pursue their claims in Skeen.  See, e.g., In re Holocaust Victim Assets Litig., 225 F.3d 191, 202 (2d Cir. 2000) ("Appellants insist that they ought to be permitted to intervene at least to state their objections to the Settlement.  However, the District Court has discretion to deny this request, particularly where . . . the proposed intervenors have already had an opportunity to state their objections before the Court."); United States. v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir. 1994) (affirming denial of request to intervene as of right, and by permission, where the proposed intervenor sought to "challeng[e] the fairness of the remedial actions to be undertaken pursuant to the consent decree," because it already had an "opportunity to express its concerns . . . during the public comment period").  The Tear Free Intervenors have not shown that such mechanisms are inadequate to protect their interest in this action.

With regard to permissive intervention, Fed. R. Civ. P. 24(b)(2) provides that on timely motion the Court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact.  The Court must consider whether permissive

intervention "will unduly delay or prejudice the adjudication of the rights" of the existing parties. Fed. R. Civ. P. 24(b)(3).

Here, there is no doubt the proposed intervention would unduly delay and prejudice the rights of the existing parties, as intervention would undermine the "protracted, extensive, and hard-fought settlement negotiations" which took place with the assistance of experienced, retained mediators and counsel over the course of fourteen months. (Weiner Decl. ¶ 13); see In re Holocaust Victim Assets Litig., 225 F.3d at 202 ("intervention would prejudice the adjudication of the rights of the existing parties by destroying their Settlement"). Moreover, the negotiated settlement is based on "extensive investigation and pre-mediation and confirmatory discovery." (Id. ¶ 19). Intervention would likely send the parties back to the drawing board, delaying the potential resolution of this case.

Under these circumstances, the Court concludes it would be inefficient and unjust to grant the Tear Fear Intervenors' motion.

Accordingly, the motion to intervene is denied.

II.   <u>Preliminary Certification of the Putative Classes</u>

Plaintiffs ask the Court to preliminarily certify for settlement purposes putative classes pursuant to Rule 23(a) and Rules 23(b)(2) and 23(b)(3).

Defendants do not oppose certification.

The Court may conditionally certify a class for settlement purposes, but must "ensure that the requirements of Rule 23(a) and (b) have been met." <u>Denney v. Deutsche Bank AG</u>, 443 F.3d 253, 270 (2d Cir. 2006).

Thus, before the Court can certify the classes, plaintiffs must satisfy the four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ.

P. 23(a); <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 398 (2010). Plaintiffs must then meet at least one of the three subsections of Rule 23(b).  <u>McLaughlin v. American Tobacco Co.</u>, 522 F.3d 215, 222 (2d Cir. 2008); <u>see</u> <u>also</u> <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (197).  Rule 23(b)(2) permits class certification when "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(3) permits class certification when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23 is to be construed liberally, rather than restrictively, and the district court is to adopt a standard of flexibility.  <u>See</u> <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 377 (2d Cir. 1997).

A.    <u>Numerosity</u>

Rule 23(a)(1) requires the Court find "the class is so numerous that joinder of all members is impracticable."  Courts in this Circuit have found this requirement met by a class consisting of forty or more members.  <u>See</u>, <u>e.g.</u>, <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs assert the putative class consists of hundreds of thousands of consumers.  Therefore, the numerosity requirement is met.

B.    <u>Common Questions of Law and Fact</u>

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."  <u>Marisol A. v. Giuliani</u>, 126 F.3d at 376.  A single question of law suffices to satisfy the commonality requirement.  <u>Monaco v. Stone</u>, 187 F.R.D. 50, 61 (E.D.N.Y. 1999).

Although the specific Babyganics products purchased by members of the proposed class vary, plaintiffs assert the common issues in this case are whether defendants engaged in fraudulent, unfair, unlawful, and deceptive business practices, whether a reasonable consumer would rely on or be deceived by defendants' business practices, and whether plaintiffs are entitled to nationwide injunctive relief.   The Court agrees that these issues of law and fact are common to all proposed class members.

C.      Typicality

Rule 23(a)(3) requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecomm Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted).  "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims."  In re Citigroup Pension Plan Erisa Litig., 241 F.R.D. 172, 178 (S.D.N.Y. 2006) (internal quotation omitted).  The typicality and commonality requirements tend to merge into one another, and similar considerations guide both analyses.  See Marisol A. v. Giuliani, 126 F.3d at 376.  It is not required that the underlying facts be identical for all class members.  Instead, the typicality requirement "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999) (internal quotation omitted).

Plaintiffs and the proposed class members purchased Babyganics products bearing the same allegedly false and deceptive representations.  While there are numerous products at issue, named plaintiffs' claims are not unique to a particular product.  Therefore, the Court preliminarily finds that the typicality requirement is met.

D.  Adequacy of Representation

Finally, under Rule 23(a)(4), the Court must examine whether named plaintiffs' interests "are antagonistic" to that of the other members of the class.  In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 142 (2d Cir. 2001); see also Amchem Prods., Inc. v. Windsor, 521 U.S. at 625–26 ("The adequacy inquiry under Fed. R. Civ. P. 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotation and citation omitted).  Class representatives must have "a sufficient interest in the outcome of the case to ensure vigorous advocacy."  Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co. Inc., 229 F.R.D. 395, 413 (S.D.N.Y. 2004).  Plaintiffs must also have attorneys who are "qualified, experienced, and generally able to conduct the litigation."  In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992) (internal quotation omitted).

Plaintiffs maintain named plaintiffs have no conflicts of interest with the class members and the interests of named plaintiffs are commensurate with those of the class members.  The Court does not foresee a conflict between named plaintiffs and the remainder of the class.  Further, in light of the representations concerning the experience and capability of plaintiffs' counsel, the Court concludes counsel are able to protect the interests all members of the class properly.  Therefore, the Court preliminarily finds named plaintiffs and their chosen counsel can adequately represent the interests of the class members.

E.    Injunctive Relief

Rule 23(b)(2) permits class certification when the party against whom relief is sought "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The proposed class meets this standard, as the representations on defendants' Babyganics products are displayed equally to all putative class members. Moreover, plaintiffs do not seek monetary relief under Rule 23(b)(2), only through the separately certified Rule 23(b)(3) class, with the concomitant procedural protections for absent members. See Sykes v. Mel Harris & Assocs., LLC, 285 F.R.D. 279, 293 (S.D.N.Y. 2012) ("That plaintiffs are seeking substantial monetary damages is of no concern given the Court's certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively."), aff'd 780 F.3d 70 (2d Cir. 2015).

F.    Predominance

Plaintiffs also seek to certify a class under Rule 23(b)(3), which requires that the Court find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As the Second Circuit has stated, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, issues of proof regarding whether defendants' product labeling was false and misleading and would have deceived a reasonable consumer are common to all members of the

class, and predominate over any issues any individual class member may have.  In addition, it appears the prosecution of this case as a class action would uphold the Court's interest in a fair and efficient adjudication better than a joint action among the putative class would.

In light of the foregoing, the Court preliminarily finds the proposed classes meet the requirements of Rules 23(a) and 23(b).  For purposes of this settlement, the Court preliminarily certifies a nationwide class of Babyganics purchasers seeking injunctive relief under Rule 23(b)(2), and a nationwide class of Babyganics seeking damages under Rule 23(b)(3).  In addition, the Court appoints named plaintiffs Tanya Mayhew, Tanveer Alibhai, and Tara Festa as class representatives and appoints Cuneo Gilbert & LaDuca, LLP, The Sultzer Law Group PC, and Halunen Law as class counsel.

III.     Fairness of the Proposed Settlement

Unlike settlements in other types of cases, settlements in class actions and putative class actions must be approved by the Court.  See Fed. R. Civ. P. 23(e); In re Initial Pub. Offering Sec. Litig., 243 F.R.D. 79, 82–83 (S.D.N.Y. 2007).  The Court must ensure the settlement is "fair, reasonable, and adequate" to the class members.  Fed. R. Civ. P. 23(e)(2).  In evaluating a settlement agreement, the Court's "primary concern is with the substantive terms of the settlement [and] the court must compare the terms of the compromise with the likely rewards of litigation."  In re Initial Pub. Offering Sec. Litig., 243 F.R.D. at 83 (internal quotation omitted).  The Court "must apprise [it]self of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."  Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982).

While the Court need not go so far as to conduct a trial on the merits, the Court must nonetheless make "findings of fact and conclusions of law whenever the propriety of the

settlement is seriously in dispute." Malchman v. Davis, 706 F.2d 426, 433 (2d Cir. 1983). In addition, the Court should look at the negotiation process to ensure it was fair. See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005) (citing Manual for Complex Litigation, Third, § 30.42 (1995)).

Review of a proposed class action settlement involves a two-step process: preliminary approval and a subsequent "fairness hearing." The Court first reviews the proposed terms of the settlement and makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms. See Manual for Complex Litigation, Fourth § 21.632 (2004); In re Initial Pub. Offering Sec. Litig., 243 F.R.D. at 87. To grant preliminary approval, the court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." In re Traffic Exec. Ass'n, 627 F.2d 631, 634 (2d Cir. 1980) (internal citation omitted). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." In re Nasdaq Market-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Once preliminary approval is granted and notice of the settlement agreement is given, the class members and settling parties are heard prior to final Court approval of the settlement. Id.

Here, plaintiffs maintain the Agreement reflects good faith, arm's-length negotiations which took place over many months among parties represented by experienced counsel with

expertise in these types of cases. Therefore, the Court believes the settlement is the result of serious, informed, and non-collusive negotiations. The Court need not perform a full fairness analysis at this time because it will be done in connection with the fairness hearing.

The Court notes, however, that it has questions regarding the Agreement that the parties should be prepared to address prior to final approval. First, "the Court questions the amount of the award to named plaintiffs stemming from their service as class representatives compared to the damages awarded to the class members individually." Nieves v. Cmty. Choice Health Plan of Westchester, Inc., 2012 WL 857891, at *5 (S.D.N.Y. Feb. 24, 2012); see also Plummer v. Chemical Bank, 91 F.R.D. 434, 441−42 (S.D.N.Y. 1981) ("Where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class."), aff'd, 668 F.2d 654 (2d Cir. 1982).

Second, plaintiffs assert the settlement fund represents a significant portion of the total potential damages in this case based on a price premium theory of damages. However, plaintiffs have given the Court very limited information from which to analyze the range of reasonableness of the settlement fund in light of the best possible recovery, and in light of the attendant risks of litigation. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (setting forth factors pertinent to analyzing substantive fairness).

Nevertheless, the Court is comfortable granting preliminary approval now and addressing these concerns at the fairness hearing.

IV.    Breadth of the Proposed Release

The Tear Free Intervenors contend the Agreement's release is overbroad.

The Court disagrees.

"[T]o achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim . . . even though the claim was not presented and might not have been presentable in the class action." TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 460 (2d Cir. 1982). The "[p]laintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 106.

First, the Tear Free Intervenors' claims in Skeen and plaintiffs' claims in this action arise from a single factual predicate: alleged false and deceptive labeling on defendants' Babyganics products. See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., 272 F. App'x 9, 13 (2d Cir. 2008) (summary order) (various fraud claims based on false statements made in different documents were based on the "same core of facts" and therefore arose out of an identical factual predicate). As such, plaintiffs have the authority to release the Tear Free Intervenors' claims. See TBK Partners, Ltd. v. W. Union Corp., 675 F.2d at 461 ("[W]here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action foreseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence.").

Second, the released claims are adequately represented in this action. "Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 106−07. Here, the proposed class includes all persons or entities in the United States who made retail purchases of any Babyganics product marketed and sold in the United States between September 7, 2010,

and the present date. Thus, the class includes the purchasers of all products at issue in the <u>Skeen</u> litigation. Moreover, named plaintiffs in this action and the Tear Free Intervenors purchased some of the same Babyganics products. (<u>Compare</u> Am. Compl. ¶¶ 13, 15, 18 <u>with</u> 17 CV 4119, Am. Compl. ¶¶ 10-14). Finally, plaintiffs in this action seek similar relief to the Tear Free Intervenors in <u>Skeen</u>. (<u>Compare</u> Am. Compl. ¶ 8 <u>with</u> 17 CV 4119, Am. Compl. ¶ 127). Thus, there is an alignment of interests between class members.

Accordingly, the proposed release is not overbroad.

V.      <u>Notice to Class Members</u>

Having preliminarily approved the Agreement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The standards for notice under Rules 23(b)(2) and (b)(3) differ.

For Rule 23(b)(2) classes, "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). For Rule 23(b)(3) classes, the Court must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The notice "must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." <u>McReynolds v. Richards-Cantave</u>, 588 F.3d 790, 804 (2d Cir. 2009). The key is that the notice be reasonable. <u>See</u> <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d at 113.

Here, the parties will mail or email notice and the claim form to all class members for whom defendants have contact information.  (Agreement § V, ¶ 2).  In addition, plaintiffs will publish notice through internet banner advertisements during a four week desktop and mobile advertising campaign, as well as four one-quarter page advertisements in the California regional edition of USA Today.  Plaintiffs also will create a website where members of the settlement class can view information about the action, and establish a toll free hotline with automated responses to anticipated questions about the action.

In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case.  (Doc. #101, Ex. F: Weisbrot Decl.)  According to Mr. Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice.  Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products."  (Weisbrot Decl. ¶ 18).  According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each.  (Id. ¶ 9).

Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

However, the Court agrees with the Tear Free Intervenors that certain aspects of the proposed notice are inadequate. The first page of the long form notices states: "A proposed nationwide Settlement has been reached in a class action lawsuit involving Babyganics Products. The Settlement resolves litigation over whether the Defendants allegedly violated state laws regarding the marketing and sale of certain Babyganics Products." (Weiner Decl. Ex. B). The word "certain" might lead a consumer to question whether a given product is covered by the Agreement, when in fact all Babyganics products marketed and sold in the United States are covered. Thus, the first page of the long form notice should be modified to state: "A proposed nationwide Settlement has been reached in a class action lawsuit involving Babyganics Products. The Settlement resolves litigation over whether the Defendants allegedly violated state laws regarding the marketing and sale of Babyganic Products in the United States."

In addition, the second bullet point in the "Basic Information" provided in the long form notice states:

> The lawsuit alleges that the Defendants violated certain laws in marketing and sales of Babyganics Products, including the use of the terms "Babyganics" "mineral-based" and "natural." The Settlement of this lawsuit will also resolve claims relating to subsets of Babyganics Products that were raised in the following cases: <u>Machlan v. S.C. Johnson, Inc.</u>, Case No. CGC-17-557613 (Sup. Ct. CA), later removed on April 28, 2017 to the District Court of the Northern District of California, No. 3:17-cv-02442 (certain Babyganics pre-moistened wipes with "plant"-related labeling); <u>Skeen v. KAS Direct, LLC d/b/a Babyganics</u>, No. 1:17-cv-4119 (S.D.N.Y.) (certain Babyganics products with "tear-free"-related labeling); and <u>Carroll v. S.C. Johnson & Son, Inc.</u>, Case No. 1:17-cv-5828, (N.D. Ill.) (certain Babyganics and mineral-based sunscreen products with SPF 50+ labeling).

The Court agrees with the Tear Free Intervenors that burying the claims not specifically raised in the complaint in this action may cause confusion. Accordingly, the second bullet in the "Basic Information" provided in the long form notice should be modified as follows:

The lawsuit alleges that the Defendants violated certain laws in marketing and sales of Babyganics Products, including the use of the terms "Babyganics" "mineral-based" and "natural." The Settlement of this lawsuit will also resolve claims relating to subsets of Babyganics Products labeled with the terms "plant-based," "tear-free" and "SPF 50+". Those claims were raised in the following cases: <u>Machlan v. S.C. Johnson, Inc.</u>, Case No. CGC-17-557613 (Sup. Ct. CA), later removed on April 28, 2017 to the District Court of the Northern District of California, No. 3:17-cv-02442 (certain Babyganics pre-moistened wipes with "plant"-related labeling); <u>Skeen v. KAS Direct, LLC d/b/a Babyganics</u>, No. 1:17-cv-4119 (S.D.N.Y.) (certain Babyganics products with "tear-free"-related labeling); and <u>Carroll v. S.C. Johnson & Son, Inc.</u>, Case No. 1:17-cv-5828, (N.D. Ill.) (certain Babyganics and mineral-based sunscreen products with SPF 50+ labeling).

Similarly, the first paragraph of the short form notice should be modified to state:

If you purchased any Babyganics Products, you may be eligible to receive a payment from a Class Action Settlement. The Action alleged that Defendants KAS Direct LLC and S.C. Johnson & Son, Inc. violated state laws regarding the marketing and sales of Babyganics Products, including the use of the terms "Babyganics," "mineral-based," "natural," "plant-based," "tear-free," and "SPF 50+."

Assuming these changes are made, the Court approves the proposed notice as it contains all the necessary information, including the nature of the lawsuit, the class, the settlement terms, and the options available to the members of the class. Fed. R. Civ. P. 23(c)(2)(B). By July 10, 2018, plaintiffs' counsel shall confirm to the Court in writing that these changes have been or will be made.

VI.    <u>Stay</u>

Until otherwise ordered by the Court, all proceedings in this action, other than proceedings necessary to carry out or enforce the terms and conditions of the Agreement and this Order, are stayed pending the fairness hearing. In addition, settlement class members are enjoined from commencing or prosecuting, either directly, indirectly, representatively or in any other capacity, any released claims.

VII.    Schedule

Angeion Group, LLC, is appointed Claims Administrator to help implement the terms of the Agreement.  By no later than July 31, 2018, the parties shall mail or email notice and the claim form to all class members for whom defendants have contact information.  Also, by no later than July 31, 2018, the Claims Administrator shall cause the Notice Program to commence as described in the Weisbrot declaration.  Specifically, the Claims Administrator shall establish a website that will inform settlement class members of the terms of the Agreement, their rights, dates, and deadlines, and related information.  The website shall include materials agreed upon by the parties and as further ordered by the Court.  Further, by no later than July 31, 2018, the Claims Administrator shall also establish a toll-free telephone number that will provide settlement-related information to settlement class members.  The Claims Administrator shall disseminate any remaining notice, as stated in the Agreement and the Weisbrot declaration.

The Court sets the following schedule for the fairness hearing and the actions which must precede it:

a)    Plaintiffs shall file their motion for final approval of the settlement by no later than September 26, 2018;

b)    Plaintiffs shall file their motion for attorneys' fees, costs and expenses, and motion for service awards by no later than September 26, 2018;

c)    Settlement class members must file any objections to the settlement and the motion for attorneys' fees, costs, and expenses, and the motion for service awards by no later than October 10, 2018;

d)    Settlement class members must exclude themselves, or opt-out, from the settlement by no later than October 10, 2018;

21

e)      Settlement class members who intend to appear at the final fairness hearing must file a notice of intention to appear at the final fairness hearing by no later than October 24, 2018;

f)      The Claims Administrator shall file a declaration or affidavit with the Court that confirms the implementation of the Notice Program pursuant to the preliminary approval order by no later than October 31, 2018;

g)      Class counsel and defendants' counsel shall have the right to respond to any objection no later than November 7, 2018; and

h)      The fairness hearing shall take place on November 14, 2018, at 10:30 a.m. at the United States Courthouse, 300 Quarropas Street, Courtroom 620, White Plains, New York 10601.

## CONCLUSION

Plaintiffs' motion is GRANTED.  The Court conditionally certifies classes under Rules 23(b)(2) and 23(b)(3) for settlement purposes, approves the parties' proposed notice and method of notification (subject to the required changes noted in Part V supra), and preliminarily approves the settlement agreement.

Proposed intervenors' motion is DENIED.

The Court will conduct a fairness hearing on November 14, 2018, at 10:30 a.m.

The Clerk is instructed to terminate the motions.  (Docs. ##99, 113).

Dated: June 26, 2018
      White Plains, NY               SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge