**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca Katherine Van Dyck
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
Fax: (202) 789-1813
charlesl@cuneolaw.com kvandyck@cuneolaw.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq. (Bar ID #: JS4546)
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

**HALUNEN LAW**
Amy E. Boyle (admitted *pro hac vice*)
1650 IDS Center
80 South Eight Street Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099 boyle@halunenlaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Tanya Mayhew, Tanveer Alibhai, and Tara Festa, individually on behalf of themselves and all others similarly situated, | : : : | Case No. 16 CV 6981 (VB) |
| Plaintiffs, | : : | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'** |
| v. | : : | **MOTION FOR FINAL APPROVAL OF THE CLASS ACTION** |
| KAS DIRECT, LLC and S.C. JOHNSON & SON, INC., | : : : | **SETTLEMENT** |
| Defendants. | : | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ III

I. INTRODUCTION ............................................................................................ 1

II. BACKGROUND OF THE LITIGATION ....................................................... 2

III. TERMS OF THE PROPOSED SETTLEMENT .............................................. 4

    A. THE SETTLEMENT PROVIDES FOR SUBSTANTIAL MONETARY AND INJUNCTIVE RELIEF ...................................................................................... 4

        1. Settlement Fund. ....................................................................... 4

        2. Injunctive Relief. ...................................................................... 5

    B. THE PROPOSED NOTICE PLAN. .................................................................. 6

IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL .................................. 7

    A. LEGAL STANDARD ..................................................................................... 7

    B. THE SETTLEMENT IS PROCEDURALLY FAIR .............................................. 8

    C. THE PROPOSED SETTLEMENT IS SUBSTANTIVELY FAIR ........................... 10

        1. The Complexity, Expense, and Likely Duration of the Litigation ............. 11

        2. The Reaction of the Settlement Class ...................................... 12

        3. The Stage of the Proceedings and the Amount of Discovery Completed ................................................................................. 14

        4. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Risks of Litigation. ............................. 15

        5. The Risks of Maintaining Class Action Status Through Trial ................. 22

        6. The Ability of Defendant to Withstand a Greater Judgment .................... 23

V. THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23 ................... 24

    A. LEGAL STANDARD ................................................................................... 24

    B. THE SETTLEMENT CLASS SATISFIES FEDERAL RULE OF CIVIL PROCEDURE 23(A) ....................................................................................................... 25

C.      THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23(B)(3) ................................................................................. 28

D.      THE CLASS CLAIMS SATISFY THE PREREQUISITES OF RULE 23(B)(2). .................. 31

VI.    THE CLASS NOTICE SATISFIES THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23 AND OF DUE PROCESS .................................... 32

A.      THE DISTRIBUTION AND TIMING OF THE NOTICE SATISFY FEDERAL RULE OF CIVIL PROCEDURE 23 AND THE U.S. CONSTITUTION............................................... 32

B.      THE CONTENT OF THE NOTICE AND THE OPPORTUNITY TO OPT OUT SATISFY FEDERAL RULE OF CIVIL PROCEDURE 23 AND THE U.S. CONSTITUTION................ 35

VII.   CONCLUSION............................................................................................................. 36

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 U.S. Dist. LEXIS 184232  (E.D.N.Y. July 18, 2013) ............................................................................ 19, 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................ 24, 27, 28, 30

*Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941 SLT, 2015 U.S. Dist. LEXIS 17358 (E.D.N.Y. Jan. 16, 2015) ................................................................................... 18

*Bravo v. Palm W. Corp.*, No. 14 9193 SN, 2015 U.S. Dist. LEXIS 135123 (S.D.N.Y. Sept. 30, 2015) .............................................................................................................. 30

*Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x 531 (9th Cir. 2016) .................... 16, 26

*Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082, 2014 U.S. Dist. LEXIS 162038 (N.D. Cal. Nov. 18, 2014)................................................................................... 26

*Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010) .............................. 31

*Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179 (S.D.N.Y. 2012) ......................... 13

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ............................................................ 7, 27

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)......... 7, 10, 22

*City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ........................................................... 17

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ................................ 25

*D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59 (E.D.N.Y. 2008)................................. 14

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................ 7, 9, 12

*DeLeon v. Wells Fargo Bank, N.A.*, No. 1:12-CV-04494, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 11, 2015)................................................................... 14

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005) ......................................... 30

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)............................................................. 33

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015).............................................................. passim

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 2016 U.S. Dist. LEXIS 137780
(S.D.N.Y. Oct. 4, 2016) ......................................................................................... 11, 23

*Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974) ................................................................ 34

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................... 34

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012) ............................... 32

*Hughes v. The Ester C Co.*, 317 F.R.D. 333 (E.D.N.Y. 2016) ................................... 16, 19, 22

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .. 11, 24

*In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, No.
13-CV-150 JPO, 2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sept. 30, 2015) ................. 19

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d
259 (S.D.N.Y. 2012) .............................................................................................................. 9

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992) .............................. 27

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 U.S. Dist.
LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ................................................................. passim

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009
U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ....................................................... 34

*In re Nassau Cty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .................................... 29

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d
207 (E.D.N.Y. 2013) ........................................................................................................... 22

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ............. 7

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) ......................................... 23, 29

*In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2015 U.S. Dist. LEXIS 127844
(S.D.N.Y. July 7, 2015) ...................................................................................................... 33

*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ.
5173(RPP), 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ............................... 15

*Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009). ...................................... 25

*Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 U.S. Dist. LEXIS 105775
(S.D.N.Y. Sept. 16, 2011) ................................................................................................... 15

*Kurtz v. Kimberly-Clark Corp.*, 320 F.R.D. 104 (E.D.N.Y. 2017) ........................................ 23

*Langan v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-cv-1470, 2017 U.S. Dist. LEXIS 35703 (D. Conn. Mar. 13, 2017) ....................................................... 26

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................... 12, 27

*Manley v. Midan Rest. Inc.*, No. 14 CIV 1693 (HBP), 2016 U.S. Dist. LEXIS 43571 (S.D.N.Y. Mar. 30, 2016) ................................................................ 12, 27, 29

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................................. 27

*Matheson v. T-Bone Rest., LLC*, No. 09 CIV. 4214 DAB, 2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) .......................................................... 15

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) ......................................... 8, 10

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) ......................... passim

*Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977) ......................................... 34

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................... 8

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ......................................... 32

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................. 32

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ......................................... 8, 12, 17

*Reyes v. Altamarea Grp.*, LLC, No. 10-CV-6451 RLE, 2011 U.S. Dist. LEXIS 115982 (S.D.N.Y. June 3, 2011) ................................................................ 9

*Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 U.S. Dist. LEXIS 46013 (N.D. Cal. Mar. 28, 2013) .......................................................... 16

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ................................................. 26

*Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125 (S.D.N.Y. 2014) ..................................... 23

*Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234 (2d Cir. 2011) .............................. 29

*Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV 7961 CM, 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 24, 2014) .......................................................... 7, 11

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ........................................... 30

*Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279 (S.D.N.Y. 2012) ........................... 25

*Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004 AJN, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) .......................................................... 30, 31

*Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 U.S. Dist. LEXIS 72826 (S.D.N.Y. May 22, 2013) ....................................................................................... 9

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ..................................................... 29

*Viafara v. MCIZ Corp.*, No. 12 CIV. 7452 RLE, 2014 U.S. Dist. LEXIS 60695 (S.D.N.Y. May 1, 2014) .............................................................................. 12, 14, 17, 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................... 25

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................... passim

*Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531(FM), 2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sept. 23, 2014) ................................................................................... 22

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. 7, 25, 31, 35

Plaintiffs Tanya Meyhew, Tanveer Alibhai, and Tara Festa ("Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of their Motion for Final Approval of the Parties' Settlement Agreement.

## I.  INTRODUCTION

Plaintiffs and Defendants KAS Direct, LLC and S.C. Johnson & Son, Inc., through their counsel (collectively, "the Parties"), have negotiated a proposed settlement that provides substantial benefits to a proposed nationwide class of persons in the United States who purchased Babyganics Products during the Class Period (the "Settlement Class" or "Class Members").  As a result of the First Amended Settlement Agreement ("Amended Settlement Agreement") (attached to the Declaration of Jason Sultzer ("Sultzer Decl.") as Exhibit 1), numerous changes will be made to the labels of millions of Products including a *front of the label* disclaimer clarifying the use of the term "Babyganics," a form of injunctive relief which is very rare in product labeling consumer protection cases.  Defendants will also remove the word "natural" from the front label of all Covered Products, clarify on the labels which ingredients in the Products are organic and which are not, define "mineral-based" on Defendant's website, conduct batch testing of covered sunscreen Products, and provide clarifications on the label of certain "tear-free" Products regarding the use and safety of those products.

In addition to this extensive injunctive relief, the Amended Settlement also provides for substantial monetary relief for members of the Class.  Class Members will be compensated from a Settlement Fund totaling $2,215,000. (Ex. 1, Amended Settlement Agreement § IV.A.1.) Class Members with proof of purchase are entitled to reimbursement of the purchase price stated on the receipt for any Covered Product, and Class Members without proof of purchase will be able to receive up to 50 percent of the purchase price and sometimes more. (*Id.* § IV.B.1 and 2.)

The Settlement was reached after thorough investigation by Plaintiffs, an exchange of pertinent information, and extensive arm's-length negotiations, including one mediation session with David Rotman of Gregorio, Haldeman & Rotman in San Francisco and two mediation sessions with Michael Young of JAMS in New York as well as multiple telephone calls and in-person meetings to discuss settlement terms. Plaintiffs submit this motion for final approval to bring closure to this matter. (Sultzer Decl. ¶¶ 10 and 11.)

For all of the reasons set forth herein, Plaintiffs respectfully apply to this Court for entry of an order (i) confirming certification of the Settlement Class and continuing the appointment of Tanya Meyhew, Tanveer Alibhai, and Tara Festa as representatives of the Settlement Class and Cuneo Gilbert & LaDuca, LLP, Halunen Law, and The Sultzer Law Group, P.C. as Class Counsel; (ii) granting Final Approval of the Settlement; and (iii) entering the Order and Final Judgment in this Action.

## II.    BACKGROUND OF THE LITIGATION

The filing of the Class Action Complaint was preceded by a year of efforts by the parties to resolve their dispute. Counsel for Plaintiffs first sent a settlement demand letter and proposed complaint to KAS on November 20, 2015, in accordance with California's Consumer Legal Remedies Act ("CLRA") (Sultzer Decl. ¶ 8.) Plaintiffs filed this Action on September 7, 2016, alleging that Defendant KAS Direct, LLC's ("KAS") use of the name "Babyganics" on a wide range of products and the term "Mineral-Based" on a number of its Sunscreens constituted fraudulent, unfair, unlawful, and deceptive business practices, in violation of the laws of the States of California and New York. (Dkt. 1, Class Action Compl. at ¶¶ 2-6.) Plaintiffs sought both injunctive and monetary relief. (*Id.* at ¶ 77.) The Parties corresponded for several months thereafter regarding potential settlement and ultimately agreed to a mediation with David Rotman of Gregorio, Haldeman & Rotman in San Francisco on August 10, 2016. (Sultzer Decl. ¶ 10.)

Plaintiffs initiated the instant lawsuit the following month. (Dkt. 1.) However, the Parties continued to discuss the potential for an early settlement and agreed to attend a mediation on March 30, 2017 with Michael Young of JAMS in New York. (Sultzer Decl. ¶ 11.) Before the second mediation, Defendants produced, pursuant to a Protective Order/Confidentiality Agreement, certain sales and marketing information to enable Class Counsel and Plaintiffs to better evaluate settlement. (*Id.* ¶ 9.) The Parties also had numerous conversations, including two in-person meetings and several telephone calls, before the second mediation. (*Id.* ¶ 13.) Counsel for Plaintiffs and Defendants attended the mediation along with a representative of Defendants. (*Id.* ¶ 11.) Though the parties did not reach an agreement that day, they continued arm's-length settlement discussions and ultimately reached a resolution on or about May 31, 2017. (*Id.*) For nearly eight weeks thereafter, the Parties continued to negotiate the terms of the Settlement. (*Id.*) Plaintiffs filed their First Amended Class Action Complaint on August 4, 2017, naming S.C. Johnson as a Defendant. (Dkt. 37.) The same day, the Parties filed for Preliminary Approval of the Joint Stipulation of Settlement. (Dkt. 38.)

Thereafter, three groups of Proposed Intervenors filed Motions to Intervene: (1) on August 11, 2017, Proposed Intervenors Skeen, Blanusa, Brown, Vidal, and Timmermeier ("*Tear Free Intervenors*") filed a Motion to Intervene (Dkt. 50); (2) on August 18, 2017, Proposed Intervenor Machlan filed a Motion to Intervene (Dkt. 52); and (3) on August 25, 2017, Proposed Intervenors Carroll, Exo, Ryden, and Shaffer ("*SPF* Intervenors") filed a Motion to Intervene (Dkt. 56). After the Proposed Intervenors filed their motions, the Parties participated in a third in-person mediation with Mr. Young on October 5, 2017, at which all intervenors were invited to participate (only counsel for Proposed Intervenor Machlan attended). Afterward, the parties advised the Court they intended to amend their motion for preliminary approval of the settlement agreement to address

the proposed intervenors' claims.  On October 23, 2017, the Court denied without prejudice the Motions to Intervene and set a deadline of December 1, 2017 for any renewed motions to intervene or oppose the preliminary settlement approval. (Dkt. 96.)

Plaintiffs filed their renewed motion for preliminary approval on November 21, 2017 (Dkt. 99), and only the *Tear Free* Intervenors renewed their motion to intervene (Dkt. 113).  On June 26, 2018, the Court denied the *Tear Free* Intervenors' motion to intervene and granted preliminary approval of the Amended Settlement Agreement on the condition that the Parties make certain amendments to the Class Notice.  (Dkt. 116.)  On July 10, 2018, the Court approved the Parties' changes to the long-form and short-form notices to the Class Members. (Dkt. 118.)

## III.     TERMS OF THE PROPOSED SETTLEMENT

### A.     The Settlement Provides for Substantial Monetary and Injunctive Relief

#### *1.     Settlement Fund.*

The Proposed Settlement provides that Defendants shall establish a Settlement Fund in the amount of $2,215,000, which shall be used to pay Eligible Claims. (Sultzer Decl. Ex. 1, Amended Settlement Agreement § IV.A.1.) The Proposed Settlement offers each eligible Settlement Class member the following:

First, Settlement Class Members shall be entitled to a cash refund in the amount of 100 percent of any purchase of a Covered Product for which a Proof of Purchase is provided. (*Id.* § IV.B.1.)

Second, Class Members who do not have a Proof of Purchase will be able to receive up to 50 percent of the purchase price and sometimes more. (*Id.* § IV.B.2.) The Initial Claim Amount will depend on the number and type of Eligible Products the Class Member purchased and is subject to *pro rata* upward or downward adjustment as described in the Amended Settlement

Agreement. (*Id.* § IV.B.) Also, under no circumstances will any Residual Funds revert to Defendants. (*Id.* § IV.C.5.)

### 2. *Injunctive Relief.*

In addition to the payment of significant monetary relief, Defendants have agreed to the following labeling and advertising changes to address the concerns raised by Plaintiffs and the Proposed Intervenors: (1) include a statement on the front label referring to the back label for clarification of which ingredients are organic and which are not, as long as Defendants market the Covered Products as "Babyganics" on the front label; (2) remove the word "natural" from the front label of all Covered Products; (3) define "mineral-based" on the product page on the websites, explaining that "mineral-based" Sunscreen Products combine the protections of both mineral and non-mineral barriers, and provide references to Defendants' website on the back of the Sunscreen Products, for as long as Defendants market the Sunscreen Products as "mineral-based"; (4) for all Sunscreen Products labeled SPF 50+, Defendants will conduct testing of each batch of applicable sunscreen to confirm the batches match or exceed the active ingredient and levels expressed on the front of the package for a three-year period and send an affirmation of compliance to Plaintiffs' Counsel; (5) for certain Babyganics products labeled "tear free," provide clarifications on the label regarding the use and safety of those products, including that the product should not be applied directly to the eye, that eyes should be flushed with water if product is applied to the eye, and that the product should be kept out of the reach of children absent adult supervision; and (6) refrain from using the statement "Plant-Based Ingredients" on pre-moistened wipes unless (a) the wipes substrate are made entirely from a material derived from plants or (b) the package lists the ingredients of the wipes substrate. (Sultzer Decl., Ex.1, Amended Settlement Agreement § IV.D.)

## B.    The Proposed Notice Plan.

The Notice Plan was implemented in accordance with the terms the Court approved.  (*See* Opinion and Order, Dkt. 116, pp. 16-21.)  On July 31, 2018, the Settlement Website and toll-free number went live. (Declaration of Steven Weisbrot, Esq., annexed to the Sultzer Decl. as Exhibit 2 ("Weisbrot Decl.") at ¶ 11.)  On July 31, 2018, Angeion caused 13 Notice and Claim forms to be mailed to individuals for which the list provided mailing addresses. (*Id.* at ¶ 6; *id* Ex. 3.)  Also on July 31, 2018, Angeion caused 25,979 emails containing the Notice and Claim Forms to be sent to individuals for which Defendants' list provided email addresses but not mailing addresses. (Weisbrot Decl. ¶ 6; *id.*, Ex. 3.)  On July 31, 2018, Angeion began running the Internet banner notice, which continued for four consecutive weeks and served a total of 65,142,985 impressions. (Weisbrot Decl. ¶ 4; *id.*, Ex. 1.) On July 31, 2018, Angeion caused the Short Form Notice to be published in the California regional edition of *USA Today*. (Weisbrot Decl. ¶ 5; *id.*, Ex. 2.)

The details of the Notice Plan, including the methodology underlying its design, were explained in the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Plan (Amended Settlement, Ex. F, Dkt. 101-1), and a summary of the Notice Plan's implementation is in the Declaration of Steven Weisbrot, Esq., filed concurrently herewith ("Weisbrot Decl."). The Notice Plan delivered a 70.05% reach (not including the print publication in the California regional edition of *USA Today* or the direct mail and email notice), exceeding the plan's target of 70%. (*Id.* at ¶ 7.) The claims data reflect the Notice Plan's success: as of September 19, 2018, Angeion has received 71,978 Claim Form submissions from Settlement Class Members. (*Id.* at ¶ 13.)

## IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

### A.  Legal Standard

Under Federal Rule of Civil Procedure 23(e), "[a] court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)); *see also* Fed. R. Civ. P. 23(e)(2). A court evaluating a class action settlement under this standard analyzes both its procedural fairness and its substantive fairness. *Visa*, 396 F.3d at 116. To determine procedural fairness, courts examine the negotiating process leading to settlement "to ensure that the settlement resulted from an arm's- length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts in the Second Circuit use the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

"The settlement of complex litigation is strongly favored." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 U.S. Dist. LEXIS 121574, at *16 (S.D.N.Y. Sept. 9, 2015). This is particularly so for class actions. *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 U.S. Dist. LEXIS 37872, at *21 (S.D.N.Y. Mar. 24, 2014); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

The Second Circuit Court of Appeals has "recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-

length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009); *see also Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *18 ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."). As Plaintiffs show below, the Settlement is procedurally and substantively fair, reasonable, and adequate, and it warrants final approval.

### B. The Settlement is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached by seasoned counsel after they had taken meaningful discovery, thoroughly analyzed the strengths and weaknesses of the claims and defenses, and engaged in vigorous and hard-fought arm's-length negotiations, including negotiations with the assistance of two highly qualified mediators and numerous discussions in person, telephonically, and via email. *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 217 (S.D.N.Y. 2015) ("A proposed settlement is procedurally fair when it is reached through arm's length negotiations between experienced, capable counsel and after meaningful discovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion," since "[t]he settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties," including with an experienced class action mediator).

Involvement of an experienced mediator in settlement negotiations raises the presumption that the settlement meets the requirements of due process. *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *21 ("The extensive participation of an experienced mediator also 'reinforces that the Settlement Agreement is non-collusive.'"); *Reyes v. Altamarea Grp.*, LLC, No. 10-CV-6451 RLE,

2011 U.S. Dist. LEXIS 115982, at *3 (S.D.N.Y. June 3, 2011) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.").

Here, the Parties reached the Settlement after Plaintiffs had conducted a thorough investigation and evaluation of the claims and defenses and after extensive arm's-length negotiations and information exchange between the Parties. (*See* Sultzer Decl. 5-13.) Settlement discussions took place in person, in mediations, by email and telephonically over nine months, both with and without the assistance with the highly respected mediators David A. Rotman, of Haldman & Rotman in San Francisco, and Michael Young of JAMS in New York. (Sultzer Decl. ¶¶ 9-13.)  Participation of a highly qualified mediator in settlement negotiations strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See D'Amato*, 236 F.3d at 85 ("[A] court-appointed mediator's involvement in precertification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 U.S. Dist. LEXIS 72826, at *9 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non- collusive."); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012).

Second, the discussions were undertaken by counsel who are well versed in complex litigation and, more specifically, in cases involving misrepresentations concerning allegedly organic and natural products. (*See* Sultzer Decl. ¶ 35; Declaration of Amy E. Boyle ("Boyle Decl.") ¶ 3-5; Declaration of Katherine Van Dyck ("Van Dyck Decl.") ¶ 4-5.)

Third, Plaintiffs and their counsel conducted a thorough investigation and evaluation of the claims and defenses prior to filing the Action and continued to analyze the claims throughout the pendency of the case. (*See*, *e.g.*, Sultzer Decl. ¶¶ 5-9.) Class Counsel conducted discovery

during the course of mediation, including obtaining sales data, average purchase price, net sales information, marketing information regarding the reasons why consumers purchase Defendant's products, as well as information regarding internal product testing conducted by Defendant. (*Id*. ¶ 9) Through this investigation, pre-mediation and confirmatory discovery, and ongoing analysis, and through litigation of Plaintiffs' claims before this Court, Class Counsel obtained an understanding of the strengths and weaknesses of the Action.

For the foregoing reasons, the Amended Settlement Agreement is procedurally fair.

**C.      The Proposed Settlement is Substantively Fair.**

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. *Grinnell*, 495 F.2d at 448. The *Grinnell* factors guide district courts in making this determination. They are:

> the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement . . . in light of the best possible recovery; (9) the range of reasonableness of the settlement . . . to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804. "In applying these factors, 'not every factor must weigh in favor of the settlement, but rather the court should consider the totality of these factors in light of the particular circumstances.'" *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *19; *accord In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 U.S. Dist. LEXIS 177175, at *14 (S.D.N.Y. Dec. 19, 2014) ("*Hi-Crush Partners*").

Evaluation of the proposed Settlement under the *Grinnell* factors supports final approval.

### 1. The Complexity, Expense, and Likely Duration of the Litigation

"This factor captures the probable costs, in both time and money, of continued litigation." *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *28. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000); *accord Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *28 ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."). This case is no exception, with thousands of Settlement Class Members and claims under the laws of numerous states. (*See* Decl. Weisbrot ¶ 13, Settlement Class Members submitted Claims; Am. Compl. ¶¶ 78-177.)

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted). First, contested class certification (and possibly subsequent decertification) motions would include battles over which law or laws should be applied to the claims of class members, the mechanism by which damages stemming from an unwarranted price premium could be calculated on a class wide basis, and whether individual purchasing decisions were relevant and/or would predominate over class wide issues. Class issues involving damages would likely generate expert discovery and *Daubert* motions as well. Although Plaintiffs are confident in their ultimate success in certifying a class based on this case's similarities to another matter before a sister court in this circuit, a positive ruling would no doubt be challenged by a decertification motion or on appeal. Defendants would also contest the ascertainability of the Class. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 2016 U.S. Dist. LEXIS 137780 (S.D.N.Y. Oct. 4, 2016) (certifying class of consumers who purchased products labeled "Active Naturals").

Second, in addition to the expected discovery concerning the manufacturing of the products and the sources and formulation of the ingredients, there would likely be lengthy and expensive expert discovery and testimony about the meaning of the terms "natural," "organic," "Tear-Free," "50+ SPF," and "mineral-based" to a reasonable consumer. These issues would generate *Daubert* motion practice as well. Each step towards trial would be subject to Defendant's vigorous opposition and possible interlocutory appeal. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources. These litigation efforts would be costly to all Parties and would require significant judicial oversight.

Although Plaintiffs believe they would ultimately prevail, "litigation of this matter . . . through trial would be complex, costly and long." *Manley v. Midan Rest. Inc.*, No. 14 CIV. 1693 (HBP), 2016 U.S. Dist. LEXIS 43571, at *9 (S.D.N.Y. Mar. 30, 2016) (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.*

For all of these reasons, this factor weighs strongly in favor of preliminary approval.

### 2. *The Reaction of the Settlement Class*

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Raniere*, 310 F.R.D. at 218; *accord Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Courts have recognized that a favorable reaction by the settlement class members strongly supports final approval of the settlement. *Viafara v. MCIZ Corp.*, No. 12 CIV. 7452 RLE, 2014 U.S. Dist. LEXIS 60695, at *17 (S.D.N.Y. May 1, 2014); *accord Visa*, 396 F.3d at 118; *D'Amato*, 236 F.3d at 86-87. The deadline for objecting to or opting out of the Settlement is October 10, 2018. (Opinion and Order, Dkt. 116, p. 21). At this time, no Settlement Class Members have objected or opted out.

(Weisbrot Decl. ¶ 14). The response to date suggests the overwhelming majority of Settlement Class Members support the Settlement.

Moreover, the issues raised in the Motions to Intervene have been resolved in the Amended Settlement Agreement. First, the *Tear Free* Intervenors argued their lawsuit "seeks to put an end to Babyganics' deceptive misrepresentations regarding the so-called 'tear free' quality of its bath products." (Dkt. 50-1 at 14.) The Amended Settlement Agreement provides that for Defendants' bath products labeled as "tear free," "Defendants will clarify on the back label that product should not be applied directly to the eye, that eyes should be flushed with water if product is applied to the eye, and that the product should be kept out of reach of children absent adult supervision." (Sultzer Decl., Ex. 1, Amended Settlement Agreement § IV.D.5.)

The Amended Settlement Agreement addresses the concerns of Intervenor Machlan by providing that Defendants "will not use a label statement 'Plant-Based Ingredients' on pre-moistened wipes . . .unless (1) the wipes substrate are made entirely from a material derived from plants or 92) the package lists the ingredients of the wipes substrate." (Sultzer Decl., Ex. 1, Amended Settlement Agreement § IV.D.6.) The Amended Settlement Agreement also addresses the claims of the SPF Intervenors in that Defendants have agreed to conduct batch testing of their Sunscreen Products labeled as SPF 50+ to confirm they match or exceed the active ingredient and levels expressed on front of package prior to expiration date. (Sultzer Decl., Ex. 1, Amended Settlement Agreement § IV.D.4.)

While courts within the Second Circuit "have regularly approved settlements even where substantial portions of the class have objected," *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197-98 (S.D.N.Y. 2012) (citing *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir. 1990), and *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982)),

"'[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness," *DeLeon v. Wells Fargo Bank, N.A.*, No. 1:12-CV-04494, 2015 U.S. Dist. LEXIS 65261, at *9 (S.D.N.Y. May 11, 2015); *see also Hi-Crush Partners*, 2014 U.S. Dist. LEXIS 177175, at *17 ("The overwhelmingly positive reaction of the Settlement Class evidences the Class' approval.").  Given that the concerns of the intervenors have been addressed by the Amended Settlement and that there have been no objections or opt-outs to date, this factor weighs strongly in favor of approving the Settlement Agreement.

### 3.  The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor "inquires 'whether the parties had adequate information about their claims,' such that counsel 'possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.'" *Meredith Corp.*, 87 F. Supp. 3d at 663 (citations omitted). "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Viafara*, 2014 U.S. Dist. LEXIS 60695, at *18 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).

Here, investigation and pre-mediation and confirmatory discovery have "advanced sufficiently to allow the parties to resolve the case responsibly." *Manley*, 2016 U.S. Dist. LEXIS 43571, at *9.  Class Counsel have conducted significant pre-mediation and confirmatory discovery related to Plaintiffs' claims, including obtaining information regarding Defendants' internal laboratory testing, and reviewing of sales, marketing, and pricing data. (*See* Sultzer Decl. ¶ 6; Weiner Decl. ¶¶ 10-11.)  Consequently, Plaintiffs had sufficient information to evaluate the claims of the class. *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59 (E.D.N.Y. 2008) ("The

amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class' in reaching a settlement.").

Courts often grant final approval of class settlements in cases where the parties conducted the same amount or even less discovery than the amount accomplished in this case. *See, e.g.*, *Matheson v. T-Bone Rest., LLC*, No. 09 CIV. 4214 DAB, 2011 U.S. Dist. LEXIS 143773, at \*3 (S.D.N.Y. Dec. 13, 2011) (granting final approval in case where discovery consisted of informal information exchange); *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 U.S. Dist. LEXIS 105775, at \*28 (S.D.N.Y. Sept. 16, 2011) (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 U.S. Dist. LEXIS 36093, at \*20 (S.D.N.Y. May 1, 2008) ("Although the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms.").

The significant amount of discovery conducted allowed the Parties to assess thoroughly the merits, risks, and value of the case. Consequently, this factor favors final approval.

### 4. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Risks of Litigation.

This Court has asked for additional information regarding the risks of establishing liability and damages. (*See* Opinion & Order, Dkt. 116, at p. 15.) Plaintiffs assert that they and the other members of the Class paid a price premium over and above what they otherwise would have paid for the Covered Products based on Defendants' label representations. (Amended Complaint, Dkt. 45, at ¶¶ 7, 8, 14, 19, 25.) Plaintiffs believe they could demonstrate the existence of such a price premium and could calculate classwide damages accordingly. (*See* Declaration of Donald M. May

("May Decl."), annexed to the Sultzer Decl. as Exhibit 3, at ¶ 33; *Goldemberg*, 2016 U.S. Dist. LEXIS 137780, at *40-41 (denying the defendants' *Daubert* motion and holding that the plaintiffs' methodology for their price premium calculation was capable of matching the plaintiffs' liability case to their damages case for class certification purposes)). However, whether the methodology would survive further challenge on the merits is an open question, and there are significant risks and costs associated with the calculation of a price premium. (*See* May Decl. ¶¶ 31-33; *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 355 (E.D.N.Y. 2016) (rejecting plaintiff's proposed methodology for calculating a price-premium in a deceptive labeling case for failing to appropriately isolate any increased price that was attributable to the label representations).)

In addition to the difficulties of calculating price-premium damages, Plaintiffs also face challenges in proving Defendants' liability. Defendants have denied any liability from the inception of the Action, and a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. (Sultzer Decl. ¶ 25.) Resolution of the question of whether Defendants' representations deceive reasonable consumers, for example, is far from certain. *See*, *e.g.*, *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 U.S. Dist. LEXIS 46013, at *27 (N.D. Cal. Mar. 28, 2013) (granting summary judgment in favor of defendant in case involving "natural" beverage labeling); *but see Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x 531, 535 (9th Cir. 2016) (unpublished) (reversing grant of summary judgment for defendant on claim that "All Natural Fruit" representation was likely to deceive reasonable consumers).

"In analyzing the risk to Plaintiffs and the Settlement Class Members in establishing liability, the Court does not 'need to decide the merits of the case or resolve unsettled legal questions.'" *Hi-Crush Partners*, 2014 U.S. Dist. LEXIS 177175, at *20. "Rather, the Court is only required to weigh the likelihood of success on the merits against the relief provided by the

Settlement." *Id.* "Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability." *Id.* "In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Id.*; *accord City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 U.S. Dist. LEXIS 64517, at *20 (S.D.N.Y. May 9, 2014).

"It has long been recognized that complex class actions are difficult to litigate." *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *36. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Viafara*, 2014 U.S. Dist. LEXIS 60695, at *19 (citing *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)). "The legal and factual issues involved [in complex class actions] are always numerous and uncertain in outcome." *Shapiro*, 2014 U.S. Dist. LEXIS 37872, at *36. Furthermore, "[p]roof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *Id.* at *11.

Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. (Sultzer Decl. ¶¶ 26-28) The proposed Settlement alleviates these uncertainties, as it "will provide tangible, certain and substantial relief to the proposed class now, 'without subjecting them to the risks, complexity, duration, and expense of continuing litigation.'" *Hi-Crush Partners*, 2014 2014 U.S. Dist. LEXIS 177175, at *23. For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages strongly support approval of the Amended Settlement Agreement. *Raniere*, 310 F.R.D. at 218.

Here, the relief the Amended Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and in light of all the attendant

risks of litigation. "There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Visa*, 396 F.3d at 119 (citation omitted). "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941 SLT, 2015 U.S. Dist. LEXIS 17358, at *17 (E.D.N.Y. Jan. 16, 2015) (citation omitted)

The Amended Settlement provides valuable injunctive relief, including changes to the front labels of millions of Products. The gravamen of the Action is that Defendants are deceiving consumers in labeling and marketing its Babyganics Products. The injunctive relief the Settlement provides—*i.e.*, written clarification on the product labeling as to which ingredients are organic and which are not, the removal of the word "natural" from the front label of all Products, clarification on the Defendant's website regarding the term "mineral based," required batch testing of the Sunscreen Products, written clarification regarding the use of certain "Tear-Free" products, and removal of the statement "Plant-Based Ingredients" from certain Products unless Defendants meet certain conditions—is an excellent outcome both for the Settlement Class members and for future consumers. It also resolves all of Plaintiffs and the Proposed Intervenors' claims. *See Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *35. ("The overall value of the settlement comprises monetary as well as non- monetary relief.").

The Amended Settlement's substantial and immediate injunctive relief compares favorably to the relief that Plaintiffs would seek—but that would not be guaranteed—were the case to proceed to trial and beyond. For example, Plaintiffs' ability to achieve a permanent injunction in the litigation context is not set in stone, as courts within the Second Circuit have recently held

plaintiffs lack standing to seek injunctive relief where they are aware of the misrepresentations at issue. *See, e.g.*, *Hughes*, 317 F.R.D. at 357; *In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Practices Litig.*, No. 13-CV-150 JPO, 2015 U.S. Dist. LEXIS 133484, at \*22 (S.D.N.Y. Sept. 30, 2015) (denying certification of Rule 23(b)(2) class); *but see Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 U.S. Dist. LEXIS 184232, at \*56, n.23 (E.D.N.Y. July 18, 2013) (holding plaintiffs had standing to seek injunctive relief).

Furthermore, the cash compensation to which eligible Settlement Class members will be entitled in the event the Court approves the Settlement goes a significant way toward compensating Settlement Class members for the damages they incurred on account of Defendant's allegedly deceptive organic, "natural," and "mineral-based" representations. The Amended Settlement permits a class member to recover, subject to pro rata reduction if the total value of claims exceeds the $2,215,000 settlement fund:

- a full refund for every Babyganics purchase, with no limitation on quantity, for which the class member has a proof of purchase (Amended Settlement Agreement at § IV.B.1), and

- a full or partial refund for up to eight additional purchases. (*Id* at §16-18.)

An examination of the price differences between some of the highest selling Babyganics Products and competitor products demonstrates why the settlement fund represents a significant portion of the monetary relief for the Class Members could expect to recover under a price premium theory:

Babyganics Sunscreen Lotion Broad Spectrum Protection - SPF 50 - 8 fl oz sells for $12.99[1] or $1.62 per ounce, while a leading competitor product, Hawaiian Tropic Island Sport

---

[1] https://www.target.com/p/babyganics-sunscreen-lotion-broad-spectrum-protection-spf-50-8-fl-

Sunscreen SPF 50 8oz sells for $8.99 or $1.12 per ounce.[2] (May Decl. ¶ 17). This represents a price premium of $0.50 per ounce, or approximately 30% of the per-ounce purchase price. The Coppertone Waterbabies Pure and Simple Zinc Sunscreen Lotion SPF 50 6oz sells for $8.99[3], or $1.50 per ounce, representing a price premium of $0.12, or approximately 7.5%.

The Babyganics 3x Laundry Detergent, Fragance Free 60oz (60 load) retails for $14.99[4], or $0.25 per load, while the Seventh Generation Free & Clear Natural Liquid Laundry Detergent 100oz (66 loads) and Tide Free and Gentle Liquid Laundry Detergent 100oz (64 load) both retail for $11.99[5] ($.018 and $.019 per load, respectively). Thus, the Babyganics detergent product has a total price premium of $.07 and $.06 over these competitors, or approximately 28%.

The Babyganics Moisturizing Daily Lotion Fragrance Free 17oz costs $7.99[6], or $.047 per ounce, while a competitor product, the Baby Dove Sensitive Moisture Lotion 20oz, costs $6.59[7], or $.33 per ounce, reflecting a price premium of $.14 per ounce, or 29%.

---

oz/-/A-39593835

[2] https://www.target.com/p/hawaiian-tropic-island-sport-sunscreen-lotion-spf-50-8oz/-/A-51164248

[3] https://www.target.com/p/coppertone-waterbabies-pure-and-simple-zinc-sunscreen-lotion-spf-50-6oz/-/A-51181436

[4] https://www.target.com/p/babyganics-3x-laundry-detergent-fragrance-free-60oz/-/A-50094974

[5] https://www.target.com/p/seventh-generation-153-free-clear-natural-liquid-laundry-detergent-100oz/-/A-13221033; https://www.target.com/p/tide-free-and-gentle-liquid-laundry-detergent-100-oz/-/A-13918061

[6] https://www.target.com/p/babyganics-daily-lotion-17oz/-/A-53429810

[7] https://www.target.com/p/baby-dove-sensitive-moisture-lotion-20oz/-/A-51276318

Finally, the Babyganics Natural Insect Repellent, 6oz retails for $ 8.99[8], or $1.67 per ounce, while the Herbal Armor Natural Insect Repellent Pump Spray, 8oz, costs $8.99[9], or $1.12 per ounce, reflecting a price premium of $.55, or 33%.

This cursory analysis shows that Babyganics may charge a price premium of anywhere between 7.5% and 33% for its products. However, because the packaging of the Babyganics Products have a wide variety of attributes, color, font, the attractiveness of the logo and/or artwork on the packaging, the shape of the packaging, SPF level, fragrance, packaging color, dispensing method, and size, it is likely that only a portion of the price premium for the product is attributable to the representations at issue in this case. (May Decl. ¶ 17.)

The total value of the sales for the challenged products in this case over the Class Period is approximately $145 million. (*See* Sultzer Decl. Ex. 4). If the total price premium for the Products is 33%, (the high end of the premium found in the analysis above), the price premium based on the deceptive representations alone might account for one-third of that figure (this fraction is possible, but likely high given the sheer number of packaging attributes that could impact consumer choice). In that case, the damages that Plaintiffs could recover on their best day would be about 11% of sales, or $15.9 million. By contrast, if the total price premium for the Products were 7.5%, and the price premium based on the deceptive representations was one-third of that figure, the maximum possible damages would be 2.5% of the purchase price, or $3.625 million. Thus, in light of the risks of certifying this case and litigating liability, the $2.215 million settlement fund represents a significant percentage of the total damages that Plaintiffs could realistically secure in this case.

---

[8] https://www.target.com/p/babyganics-natural-insect-repellent-6-fl-oz/-/A-53388025

[9] https://www.target.com/p/8oz-natural-insect-repellent-pump-spray-herbal-armor/-/A-50016443

Because the Settlement Fund represents a significant portion of the total potential damages in this case, the Settlement is both fair and reasonable. *See Grinnell*, 495 F.2d at 455 n.2 (in theory, even a recovery of only a fraction of one percent of the overall damages could be a reasonable and fair settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 229 (E.D.N.Y. 2013) (granting final approval to antitrust class action settlement representing approximately 2.5 percent of the highest damages estimate as "within the range of reasonableness in light of the best possible recovery and in light of all the attendant risks of litigation").

Indeed, courts in this District have recently approved comparably sized settlements in product-labeling class actions. *See, e g.*, Order Granting Final Approval of Class Action Settlement, *Vincent v. People Against Dirty, PBC*, No. 7:16-cv-6936 (S.D.N.Y. June 20, 2017) (Dkt. 55) (approving $2.8 million fund); Order Approving Class Action Settlement and Final J'ment, *Rapoport-Hecht v. Seventh Generation Inc.*, No. 7:14-cv-9087 (S.D.N.Y. Apr. 28, 2017) (Dkt. 76) (approving $4.5 million fund). The $2,215,000 Settlement Fund is also a victory for the Settlement Class, especially in light of the risks of continued litigation Plaintiffs discussed above. "The substantial amount of the settlement weighs in favor of final approval." *Viafara*, 2014 U.S. Dist. LEXIS 60695, at *21 (total settlement of $550,000); *see also Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531(FM), 2014 U.S. Dist. LEXIS 135635, at *15 (S.D.N.Y. Sept. 23, 2014) (stating same where parties reached settlement of "up to $6.9 million").

### 5. *The Risks of Maintaining Class Action Status Through Trial*

Plaintiffs believe common issues predominate and that they would succeed in certifying a class or classes for litigation purposes. However, it would be difficult to certify and maintain a national class through trial. *See, e.g.*, *Hughes*, 317 F.R.D. at 358 (denying certification of national class of consumers who purchased vitamin C supplements because individual questions of law and

fact predominated); *Kurtz v. Kimberly-Clark Corp.*, 320 F.R.D. 104, 106 (E.D.N.Y. 2017) (declining to certify national class, but certifying New York class of consumers of cleansing wipes); *but see Rodriguez v. It's Just Lunch, Int'l,* 300 F.R.D. 125, 149 (S.D.N.Y. 2014) (certifying national class of consumers who were overcharged by a matchmaking service). In the alternative, Plaintiffs could move for certification of several statewide classes, which courts in this Circuit have frequently granted. *See*, *e.g.*, *Goldemberg*, 2016 U.S. Dist. LEXIS 137780 (certifying New York, California, and Florida classes of consumers who purchased products labeled "Active Naturals"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) (certifying New York and California class off consumers); *Ackerman*, 2013 U.S. Dist. LEXIS 184232, at * 95 (recommending certification of classes of New York and California injunctive classes);

The Parties anticipate class certification would only be resolved after further discovery, possibly including expert discovery concerning calculation of damages on a class-wide basis, and intense, exhaustive briefing. (Sultzer Decl. ¶¶ 27, 28.)  Although Plaintiffs are confident class treatment is appropriate in this case, even if the Court were to certify a class, Defendants could seek an interlocutory appeal pursuant to Rule 23(f), raising the possibility of overturning certification. (*Id.*) Furthermore, Defendants could move "to de-certify the Class before trial or on appeal at the conclusion of trial." *Hi-Crush* Partners, 2014 U.S. Dist. LEXIS 177175, at *24; *see also Visa*, 396 F.3d at 119 n.24 ("[D]ecertification is always possible as a case progresses and additional facts are developed."). Risk, expense, and delay permeate such processes. The Amended Settlement eliminates this risk, expense, and delay. For these reasons, this factor favors final approval.

### 6.    *The Ability of Defendant to Withstand a Greater Judgment*

Defendants have the ability to pay more than a $2,215,000 judgment. However, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Fleisher*, 2015 U.S. Dist.

LEXIS 121574, at *33 (quoting *D'Amato*, 236 F.3d at 86); *accord In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. "[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Meredith Corp.*, 87 F. Supp. 3d at 665. This factor is neutral and does not preclude the Court from granting final approval.

Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Amended Settlement Agreement is fair, adequate, and reasonable. As such, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

## V.    THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23

### A.    Legal Standard

The benefits of the proposed Settlement can be realized only through final certification of the Settlement Class for settlement purposes pursuant to Rule 23. *See Meredith Corp.*, 87 F. Supp. 3d at 659 ("Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'"). The U.S. Supreme Court has emphatically confirmed the viability of settlement classes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). In *Amchem Products, Inc.*, the Supreme Court reiterated the "dominant concern" governing analysis under Rule 23: "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621.

Here, the proposed Settlement Class satisfies this dominant concern; indeed, as Plaintiffs set forth in their preliminary approval brief (Memorandum of Law In Support of Plaintiffs' Renewed Motion for Preliminary Approval of Settlement 24-30, ECF No. 100), the Settlement Class satisfies all prerequisites of Rule 23(a), as well as all requirements of Rule 23(b)(3). Furthermore, no one has challenged the Court's preliminary certification of the Settlement Class,

and nothing has occurred subsequently to cast doubt on whether the Settlement Class meets the applicable requirements of Rule 23. The Court should now finally certify the Settlement Class for purposes of effectuating the Settlement.

### B.    The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)

"Under Federal Rule of Civil Procedure 23(a), plaintiffs must meet the four requirements of numerosity, commonality, typicality, and adequacy of representation." *Meredith Corp.*, 87 F. Supp. 3d at 659; *see* Fed. R. Civ. P. 23(a)(1)–(4). The Settlement Class meets each requirement.

**Numerosity:** The proposed Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1), since there is no dispute that thousands of people nationwide purchased the Babyganics Products during the Class Period. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

**Commonality:** Under Rule 23(a)(2)'s commonality requirement, what matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in the Second Circuit construe commonality liberally. *See, e.g.*, *Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012) ("The Rule does not require all questions of law or fact to be common."); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 429 (S.D.N.Y. 2009). "[E]ven a single common question will suffice." *Sykes*, 285 F.R.D. at 286.

Here, the commonality requirement is met because there are common contentions for which determination of their truth or falsity will resolve issues that are central to the validity of each one of the claims in one stroke. Common questions include: (1) whether Defendants falsely represented that their Products are organics; (2) whether Defendants falsely represented the ingredients in their Sunscreens; (3) whether Defendants falsely represented that their Sunscreens have an SPF of 50 or higher; (4) whether Defendants falsely represented their Bath Products are

non-irritating and non-harmful to the eyes of infants and children; (5) whether Defendants falsely represented their Products are natural; (6) whether Defendants engaged in fraudulent, unfair, unlawful, or deceptive business practices; (7) whether a reasonable consumer would rely on or be deceived by Defendants business practices; and (8) whether Plaintiffs and the Nationwide Class are entitled to nationwide injunctive relief.

Similar questions have been found to satisfy the commonality requirement in other class actions. *See Langan v. Johnson & Johnson Consumer Companies, Inc*., No. 13-cv-1470, 2017 U.S. Dist. LEXIS 35703, at *44-45 (D. Conn. Mar. 13, 2017) (certifying Rule 23(b)(3) class of purchasers of sunscreens and other "natural" baby products, including "Aveeno Baby Natural Protection Mineral Block"); *Brazil*, 660 Fed. App'x at 533-34, 535 (reversing summary judgment in Dole's favor on California UCL claims and affirming certification of Rule 23(b)(2) and 23(b)(3) classes where plaintiffs alleged that "All Natural Fruit" label is deceptive where "products contain synthetic citric acid and ascorbic acid); *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082, 2014 U.S. Dist. LEXIS 162038, at *62-63 (N.D. Cal. Nov. 18, 2014) (certifying multiple classes of purchasers of personal care products with misleading labels, including products that were not purchased by the named class representatives). The commonality requirement is similarly met here.

**Typicality:** "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). The typicality requirement "ensures that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Manley*, 2016 U.S. Dist.

LEXIS 43571, at *11. "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

Here, the named Plaintiffs' claims are typical of the Settlement Class Members' claims because the named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Settlement Class Members' claims. Here, Plaintiffs and the Settlement Class members all bought Products bearing the same product name, "Babyganics," and the same representations, "Mineral-Based," natural, "SPF 50+," and "Tear-Free." (*See* Amended Complaint, Dkt. 145 ¶¶ 13-19.) Plaintiffs have also linked this branding to their fraud and misrepresentation claims. *Brown*, 2014 U.S. Dist. LEXIS 162038, at *41 ("The named plaintiffs here do 'link' their claims to those arising from products that they themselves did not buy, and the challenged representations are not 'unique' to any product."). They therefore satisfy Rule 23(a)'s typicality prong.

**Adequacy of Representation:** "Adequate representation is a twofold requirement: class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." *Manley*, 2016 U.S. Dist. LEXIS 43571, at *12; *accord In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.*, 521 U.S. at 625; *see also Charron*, 731 F.3d at 249. The interests of Plaintiffs and the putative class members are aligned because they all are pursuing the claim that they suffered similar injury in the form of purchasing various Products bearing the same false labels, and all class members seek the same relief.

As to the second inquiry, Plaintiffs and Class Counsel have demonstrated that they will prosecute this action vigorously and will continue to do so. Plaintiffs have reviewed the Settlement Agreement and given their approval. (Amended Settlement Agreement at 41.) Additionally, Class Counsel are well qualified, possess no conflicts of interest, and have already proven capable of prosecuting this action vigorously on behalf of the class. Plaintiffs' counsel have litigated this Action since its inception and did so on behalf of both the putative injunctive and damages class members. All firms that seek to represent the class have extensive experience in handling complex commercial litigation, including class actions. (See The Sultzer Law Group Resume, annexed to the Sultzer Decl. as Exhibit 5; Boyle Decl. ¶¶ 3-5, Ex. A; Van Dyck Decl. ¶4-5) Adequacy is therefore met.

### C.     The Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3)

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"[10] *Amchem Prods., Inc.*, 521 U.S. at 615. Rule 23(b)(3) "is designed to 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Meredith Corp.*, 87 F. Supp. 3d at 661. The Settlement Class satisfies both requirements.

**Predominance:** The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct.

---

[10] Manageability under Rule 23(b)(3)(D)

1036, 1045 (2016) "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Manley*, 2016 U.S. Dist. LEXIS 43571, at *15. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson*, 136 S. Ct. at 1045. "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234 (2d Cir. 2011).

Here, for settlement purposes, predominance is satisfied. As noted above, "[c]lasswide evidence w[ould] be used to establish whether [Defendants'] labeling . . . was false, and if so, whether it was likely to mislead a reasonable consumer acting reasonably under the circumstances." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409. It would likewise be used to prove that Plaintiffs and the putative class members "suffered economic harm when they paid for a worthless product, or when they paid a premium" for Defendants' products. *Id.* Moreover, "[r]elief under the UCL and FAL is available without individualized proof of 'reliance and injury, so long as the named plaintiffs demonstrate injury and causation.'" *Id.* at 410. Finally, individualized questions of damages need not defeat predominance in a class action. *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006) (noting that a number of management tools are available to handle individualized damages issues). As a result, the predominance prong of Rule 23(b)(3) is satisfied.

Nor do differences in state laws defeat predominance. Courts in this Circuit have certified national classes of consumers for the purposes of settlement. Order Granting Final Approval of Class Action Settlement, *Vincent v. People Against Dirty, PBC*, No. 7:16-cv-6936 (S.D.N.Y. June 20, 2017); Order Approving Class Action Settlement and Final Judgment, *Rapoport-Hecht v. Seventh Generation Inc.*, No. 7:14-cv-9087 (S.D.N.Y. Apr. 28, 2017). National settlement classes are appropriate because any differences in state law are an issue of manageability, rather than predominance. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 303 (3d Cir. 2011); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 335 (S.D.N.Y. 2005) ("Because this is a settlement-only class, the Court need not be concerned with the feasibility of managing the trial of a class action involving many different states' laws."). Such manageability concerns are "not relevant for class action settlements," *Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004 AJN, 2015 U.S. Dist. LEXIS 139266, at *11 (S.D.N.Y. Oct. 13, 2015), "for the proposal is that there be no trial," *Amchem Prods., Inc.*, 521 U.S. at 620.

**Superiority:** Class certification "is superior to other methods available for a fair and efficient adjudication of the controversy" where "the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." *Bravo v. Palm W. Corp.*, No. 14 9193 SN, 2015 U.S. Dist. LEXIS 135123, at *9 (S.D.N.Y. Sept. 30, 2015). A class action is the superior method for resolving Plaintiffs' claims. The prosecution of separate actions by individual Settlement Class Members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants and would lead to repetitive trials of the predominant common questions of fact and law. Further, absent a class action, Settlement Class Members would be left to bring individual

claims for damages amounts that often would be too small to provide an economic justification for individually bringing suit, in light of the costs of litigation. *Meredith Corp.*, 87 F. Supp. 3d at 661 (finding superiority met where "the price-tag for an individual [plaintiff] to bring this suit would have almost certainly dwarfed even the highest realistically imaginable recovery for that [plaintiff]"). Consequently, the superiority requirement is satisfied. *Tart,* 2015 U.S. Dist. LEXIS 139266, at *11.

### D.  THE CLASS CLAIMS SATISFY THE PREREQUISITES OF RULE 23(B)(2).

Plaintiffs also seek to certify a nationwide injunctive class under Rule 23(b)(2). (Amended Settlement Agreement § II.A.38.) Certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Defendants' challenged conduct "was directed at all members of the proposed settlement class." *Meredith Corp.*, 87 F. Supp. 3d at 660. "This lawsuit is being driven largely by Plaintiffs' desire to obtain class-wide injunctive relief." *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 237 (S.D.N.Y. 2010). Namely, Plaintiffs have alleged that the trademark "Babyganics" which is found on all of Defendants' Products, is misleading. "[T]he contemplated settlement provides the future conduct relief necessary to protect all members of the proposed settlement class." *Meredith Corp.*, 87 F. Supp. 3d at 660. First, Defendants have agreed to change their labels to provide clarity as to "which ingredients are organic and which are not." (Amended Settlement Agreement § IV.D.1.) Second, Defendants have agreed to remove the term "natural" from their Products' labels and the phrase "Plant-Based Ingredients" from a subset of those products. (*Id*. § IV.D.6.) Third, Defendants will provide additional warnings on their Bath Products regarding

application of those products to the eye. (*Id*. § IV.D.5.) Fourth, Defendants will more accurately

define the term "mineral based" on its website, so consumers understand that Defendants'

sunscreens include both mineral and non-mineral barriers. (*Id*. at § IV.D.3.) Moreover, Defendants

will provide a link to that website on its Sunscreen labels. (*Id*.) Fifth, Defendants will be required

to perform quality control testing on its sunscreens at defined intervals to ensure they have a

minimum SPF of 50. (*Id*. at § IV.D.4.) This relief directly remedies Plaintiffs' chief concern that

Defendants' labeling is false and deceptive, and it protects the Settlement Class Members from

future harm. Moreover, the injunctive relief is being offered in conjunction with monetary relief

that will fully compensate the Settlement Class Members. *See supra* Section IV.

## VI.   THE CLASS NOTICE SATISFIES THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23 AND OF DUE PROCESS

As Plaintiffs detail below, the Notice Plan meets the requirements of the Federal Rules of

Civil Procedure and of due process under the U.S. Constitution.

### A.   The Distribution and Timing of the Notice Satisfy Federal Rule of Civil Procedure 23 and the U.S. Constitution

The threshold requirement concerning class notice is that the means employed to distribute

the notice must be reasonably calculated to apprise the class of the pendency of the action, of the

proposed settlement, and of the class members' rights to opt out or object. *See Phillips Petroleum*

*Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) ("To

comport with due process, the notice provided to absent class members must be the best

practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections." (citation and

internal quotation marks omitted)); *see also* FED. R. CIV. P. 23(e)(1) ("The court must direct

notice in a reasonable manner to all class members who would be bound by the [proposed

judgment].”). The due process requirements of the U.S. Constitution may be satisfied by sending a copy of the notice by first class mail to each class member whose address can be located with reasonable effort, along with publication notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77 (1974).

Because Plaintiffs seek final certification of the Settlement Class under Rule 23(b)(3), the notice must be the “best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.” FED. R CIV. P. 23(c)(2)(B). “The Second Circuit has stated that ‘Rule 23 . . . accords considerable discretion to a district court in fashioning notice to a class.’” *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2015 U.S. Dist. LEXIS 127844, at \*3 (S.D.N.Y. July 7, 2015) (quoting *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 168 (2d Cir. 1987)).

Dissemination of class notice based on Defendants’ customer data plus distribution via Internet websites and regional publication amply satisfies the procedural requirements for class notice under Rules 23(c)(2) and (e)(1), as well as the constitutional requirements. As discussed above (*see supra* Section III.B), in accordance with the Preliminary Approval Order, on July 31, 2018, Angeion provided notice to the Settlement Class Members by means of direct mailing and email. (*See* Opinion and Order, Dkt. 116 p. 18; Weisbrot Decl. ¶ 6.) In addition, during the four-week time period beginning on July 31, 2018, Angeion provided Internet banner notice that served 65,142,985 impressions. (Weisbrot Decl. ¶ 4.) The notice program incorporated publications of the Short Form Notice in the California regional edition of *USA Today* on July 31, 2018 (*Id.* at ¶ 5) Additionally, as the Preliminary Approval Order required, on July 31, 2018 Angeion published the Settlement Website, which provided Settlement Class Members with, *inter alia*, access to key case documents. (Opinion and Order, Dkt. 116 p. 18; Weisbrot Decl. ¶ 8.) Finally, in accordance

with the Preliminary Approval Order, on July 31, 2018, Angeion set up, and it subsequently maintained, a toll-free telephone number devoted to the case and available 24 hours a day, 7 days a week, which provided Settlement-related information to the Settlement Class Members. (Opinion and Order, Dkt. 116 p. 18; Weisbrot Decl. ¶ 11.)

Timing of the notice was also sound. Settlement Class Members have approximately 90 days following publication of the class notice to submit Claims (*see* Weisbrot Decl. ¶ 13) and approximately 70 days following publication of the class notice to determine whether to object to, or opt out of, the Settlement (Opinion and Order, Dkt. 116 p. 21). These periods are longer than those deemed adequate in other class action settlements. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *67 (S.D.N.Y. Dec. 23, 2009) (30 days between notice mailings and deadline to submit objections sufficient); *see also Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 430 (5th Cir. 1977) (four weeks between notice mailings and settlement hearing sufficient); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (19 days); *Greenspun v. Bogan*, 492 F.2d 375, 378 (1st Cir. 1974) (four weeks).

This vigorous notice program resulted in 65,142,985 impressions via the banner ad, 25,979 emails directly to consumers, and 13 mailed Notice Forms, and resulted in no opt outs or objections. (Weisbrot Decl. ¶¶ 4,6, 14.) The Federal Judicial Center Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide instructs judges evaluating notice prior to final settlement to look for evidence that the notice plan reached class members as well as anticipated and to review the number and nature of opt outs and objections. (The Federal Judicial Center Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide, at

p. 7.)  Based on the number of impressions created and the absence of objections or opt-outs, the notice plan satisfies those requirements.

**B.      The Content of the Notice and the Opportunity to Opt Out Satisfy Federal Rule of Civil Procedure 23 and the U.S. Constitution**

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 114. "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114. "Notice is 'adequate if it may be understood by the average class member.'" *Id.* Under Rule 23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settlement Notice more than satisfies these standards. The Short-Form Notice contained a summary of the Action and the Settlement and informed Settlement Class Members (i) that they must file a claim to receive a Settlement payment; (ii) of their right to object to the proposed Settlement and the date by which they must do so; (iii) of their right to exclude themselves if they do not want to be bound by the proposed Settlement and the date by which they must do so; and (iv) that the Settlement will bind all Settlement Class Members who do not request exclusion. (Weisbrot Decl., Ex. 1.)  The Short-Form also directed recipients to the dedicated

Settlement Website, where additional information with respect to the Action is posted, including the more detailed Long-Form Notice. (*See id.*)

The Long-Form Notice includes a description of the terms of the Settlement (including notice of the opportunity to opt out or object, a short and plain statement of the background of the Action, an explanation of the reasons for the Settlement, and notice of the amount of Class Counsel's Attorneys' Fees and Expenses to be submitted for approval by the Court). (Weisbrot Decl. Ex. 3.). The Long-Form Notice advises Settlement Class Members that they will be bound by the judgment and orders of the Court if they do not request exclusion by October 10, 2018, and that any Settlement Class Member may enter an appearance. (*See id.*) The Long-Form Notice advises that the Court will conduct a Fairness Hearing on November 14, 2018, at 10:30 a.m., at which time Settlement Class Members may be heard, and it states the benefits of the Settlement. (*See id.*) If there are any remaining questions, the Long-Form Notice contains the toll-free number and an email address for Angeion. (*See id.*)

Additionally, Plaintiffs amended the Long-Form Notice as instructed by the Court in the Preliminary Approval Order (Order, Dkt. 116, pp. 19-20), and made changes to the Short-Form Notice, which were approved by the Court. (Dkt. 117.) The changes made it clear that the Settlement covers all Babyganics Products marketed and sold in the United States During the Class Period and that the Settlement covers claims raised in the "plant-based," tear-free," and "SPF 50+" litigation Unquestionably, the class notice was adequate, comprehensive, and timely, and it provides Settlement Class Members with sufficient information to make an informed and intelligent decision with respect to whether to participate in the Settlement.

## VII. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully apply to this Court for entry of an order (i) confirming certification of the Settlement Class and continuing the appointment of Tanya

Mayhew, Tanveer Alibhai, and Tara Festa as representatives of the Settlement Class and Cuneo Gilbert & LaDuca, LLP, Halunen Law, and The Sultzer Law Group as Class Counsel; (ii) granting Final Approval of the Settlement; and (iii) entering the Order and Final Judgment in this Action.

Dated: September 26, 2018                              **CUNEO GILBERT & LADUCA, LLP**

By:     _s/ Charles J. LaDuca_

Charles J. LaDuca (Bar ID # 3975927)
Katherine Van Dyck
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Tel:  (202) 789-3960
Fax:  (202) 789-1813
charlesl@cuneolaw.com
kvandyck@cuneolaw.com

THE SULTZER LAW GROUP P.C.
Jason P. Sultzer (Bar ID #: JS4546)
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

HALUNEN LAW
Amy E. Boyle
1650 IDS Center
80 South Eight Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
Boyle@halunenlaw.com